731 So.2d 792 (1999)
Robert S. JABOUR, Richard Jabour, etc., Appellants,
v.
Carlos CALLEJA, Grace Calleja, Juan Calleja and Alice Calleja, Appellees.
No. 98-1866.
District Court of Appeal of Florida, Third District.
April 21, 1999.
Rehearing Denied June 9, 1999.
*793 Browning, Sireci, Guller & Klitenick and Charlene G. Browning, Key West, for appellants.
Morgan & Hendrick and Wayne LaRue Smith, Key West, for appellees.
Before SCHWARTZ, C.J., GODERICH and SORONDO, JJ.
PER CURIAM.
Robert S. Jabour, Richard Jabour, and the heirs, devisees, grantees, and assignees of both Maurice Jabour and Francis Jabour, both deceased, appeal the lower court's Final Judgment entered in favor of Carlos Calleja, Grace Calleja, Juan Calleja and Alice Calleja. We reverse.
This case involves a boundary dispute between contiguous property owners. Originally, the land in question was owned by the Toppino family of Key West, Florida. In 1954, the Toppinos started selling parcels of land from their larger parcel to the Jabour family, who was starting a trailer park. In 1990, the Jabours received a letter from the heirs of the Toppinos demanding rent to be paid on three small slivers of property which were in the middle of the property that the Jabours had already purchased piecemeal from the Toppinos decades before and for which the Toppinos were still paying property taxes. It appears that through various conveyances over the years from the Toppinos to the Jabours, almost all the Toppino property had been conveyed to the Jabours except for these three slivers in question.
The Toppinos filed an eviction action against the Jabours to evict them from those three small slivers of land. The Jabours counterclaimed for adverse possession, among other things, and also moved to dismiss the complaint regarding one of the three parcels because the Toppinos failed to join an indispensable party, the plaintiffs below, Carlos and Grace Calleja *794 (Callejas), as they were in possession of a certain portion of the disputed strip.[1]
On January 21, 1992, the Toppinos' attorney, Steven Esquinaldo, wrote a letter to the Callejas asking that they move their fence off the property or they would be joined in the Toppino/Jabour lawsuit. On January 27, 1992, Mr. Esquinaldo received a telephone call from the Callejas saying they would move the fence. Again in April of 1992, Mr. Esquinaldo wrote a second letter to the Callejas informing them that the Jabours claimed the boundary fence encroached upon their property and requesting a quitclaim deed. Mr. Esquinaldo attached to the letter the Stipulation of Settlement Agreement and a survey of the subject property. Mr. Esquinaldo prepared a quitclaim deed for the limited conveyance. The quit-claim deed was signed April 13, 1992. Carlos Calleja claimed that he understood the quitclaim deed granted six inches of land. The property description in the quitclaim deed did not identify the location of the boundary fence but it did contain a metes and bounds description.
Prior to the signing of the quitclaim deed, the Toppinos and the Jabours had entered into a Stipulation of Settlement Agreement contingent upon the Toppinos' receiving the subject quitclaim deed from the Callejas. The Stipulation was signed and an Order entered by the trial court. In exchange for the quitclaim deed from the Callejas on the subject parcel, along with the quitclaim deed from the Toppinos, the Toppinos were to receive approximately $11,000 over a period of a few months and the dismissal of the Jabours' counter-claim action against them.
Sometime later, the Callejas started construction on a new fence placed approximately six inches from the original chain link fence. In June of 1995, the Jabours destroyed the partially constructed fence and began constructing another fence four to six feet from the original chain link fence on the Caroline Street property. The Callejas filed suit seeking declaration that the deed was invalid, to quiet title in the subject property, and for an injunction preventing the Jabours from completing the new fence. The Callejas claimed they revoked the quitclaim deed prior to it being delivered to and accepted by the Jabours, after the Callejas discovered that the Jabours were claiming a six-foot strip of the disputed parcel, rather than a six-inch strip. An emergency injunction was granted in favor of the Callejas that prevented the Jabours from completing the fence they were constructing.
Mediation failed and a bench trial followed. At the close of the Callejas' case, the Jabours moved to dismiss the complaint for failure to join the Toppinos as an indispensable party, failure to deraign the title as required by statute, and failure to state with particularity the property in which they were seeking to quiet title. This motion was denied, and judgment was rendered for the Callejas. This appeal followed.
The Jabours raise several points on appeal. We find merit in the Jabours' contention that the recorded quitclaim deed from the Callejas to the Jabours was valid and conclude that this issue is dispositive.
The Final Judgment of the trial court found the recorded deed from the Callejas to the Jabours invalid due to failure of consideration and unilateral mistake. The *795 Jabours contend that 1) the recorded quitclaim deed from the Callejas to the Jabours was valid because forbearance from joining the Callejas in the suit was adequate consideration, and 2) the unilateral mistake referred to by the court in the Final Judgment is insufficient grounds to allow rescission of the subject deed.
Under the facts of this case, we agree with the Jabours that there was consideration for the Callejas giving the subject deed. Forbearance from suit is adequate consideration. See Citibank Int'l v. Mercogliano, 574 So.2d 1190 (Fla. 3d DCA 1991). The record reflects that there was a motion to dismiss the complaint as a result of a failure to join the Callejas as indispensable parties in the Toppino/Jabour action because the Callejas appeared to be in possession of part of the disputed property. A letter was sent by Mr. Esquinaldo stating that the Callejas would be joined in the action if they did not sign a quitclaim deed. The Callejas did not respond, and Mr. Esquinaldo sent another letter to the Callejas. The Callejas then came into Mr. Esquinaldo's office and signed the deed. The Settlement Agreement that accompanied the second letter had attached to it a copy of the Stipulated Settlement Agreement which indicated that the settlement was contingent upon the Toppinos obtaining the quitclaim deed from the Callejas to the Jabours. Thus, the Callejas were aware that if they did not sign the deed, they would be brought into the action. This was valid consideration for the deed's being given.
Furthermore, we agree with the Jabours that the unilateral mistake referred to by the trial court in the Final Order is insufficient to allow rescission of the subject deed. A party has a duty to learn and know the contents of an agreement before signing it. See Onderko v. Advanced Auto Ins., 477 So.2d 1026 (Fla. 2d DCA 1985). In order for a party to rescind a deed on the basis of a mistake of a material fact, the injured party must affirmatively show that the mistake did not result from his own failure to exercise reasonable care. See Williams, Salomon, Kanner, Damian, Weissler & Brooks v. Harbour Club Villas Condominium Ass'n, Inc., 436 So.2d 233 (Fla. 3d DCA 1983). Where a party has the ability to gather information as to the quality of land being conveyed and fails to make such inquiry, that party is not entitled to the cancellation of the deed conveying the property. See Willis v. Hillsborough County, 117 Fla. 1, 157 So. 29 (1934).
The Callejas allege that they believed they were conveying a six-inch strip of property rather than a six and one-half foot strip of property. The record reflects that Mr. Esquinaldo sent two letters to the Callejas. The undisputed testimony was that Mr. Esquinaldo told the Callejas that there would be no way to ascertain the amount of land given up by them without a new survey and that the Callejas agreed to sign without the benefit of a survey. Mr. Esquinaldo further testified that he made it clear to the Callejas that the deed was based on the survey prepared from the sketch attached thereto and that he advised the Callejas to seek independent counsel, as there was no way he could ascertain how much land was to be given without a proper survey. Mr. Calleja failed to do so. We believe this evidence demonstrates the Callejas' negligence and does not amount to a unilateral mistake sufficient to rescind the deed under Florida law.
Accordingly, because the record reflects that the deed was signed, executed, delivered, and not rejected, we conclude it was a valid deed. We reverse the lower court's final judgment quieting title in Carlos and Grace Calleja and remand the case so that final judgment can be entered for the Jabours, quieting title in their name.
NOTES
[1] On May 25, 1953, the Callejas had acquired title to one of the three parcels, located on the north side of Caroline Street between Elizabeth Street and William Street in Old Town Key West (the Caroline Street property). At the time of the Callejas' acquisition of the parcel, there existed along the entire northeast border a fence, beginning at the southeast corner of the Caroline Street property and extending in a northwesterly direction 120 feet to its termination at the northeast corner of the Caroline Street property (boundary fence). From mid-1953 through mid-1994, the boundary fence remained in place and the Callejas exclusively possessed the Caroline Street property, including all portions of it lying south and west of the boundary fence.