[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

-----------------------------------------

No. 05-11045
Non-Argument Calendar

-----------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 10, 2006
THOMAS K. KAHN
CLERK

D.C. Docket  No. 04-20409-CV-JLK

UNIVERSITY OF MIAMI,
a not-for-profit Florida corporation,

Plaintiff-Appellant,

versus

INTUITIVE SURGICAL, INC.,
a Delaware corporation,

Defendant-Appellee.

------------------------------------------------------------------
Appeal from the United States District Court
for the Southern District of Florida
------------------------------------------------------------------

**(February 10, 2006)**

Before EDMONDSON, Chief Judge, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant University of Miami ("UM") appeals the district court's grant of summary judgment to Defendant Intuitive Systems, Inc. ("Intuitive"), successor in interest to Computer Motion, Inc. ("CMI"), on UM's breach of contract, fraud-based and promissory estoppel claims. No reversible error has been shown; we affirm.

UM sought to become a preeminent robotics training center and considered purchasing one of two available robotic surgical systems: CMI's "Zeus" system, and Intuitive's "da Vinci" system. UM chose the Zeus system because it was less expensive and smaller.

In July 2002, CMI submitted to UM its "University of Miami School of Medicine and Computer Motion Interdependent Relationship Plan" ("Plan"). The Plan outlined terms for the sale of two Zeus systems to UM and proposed that CMI function as a long-term partner to UM. UM did not accept the Plan.

Over the next six months, CMI and UM negotiated about a potential Zeus sale. On 31 December 2002, CMI and UM executed a Purchase Agreement ("Agreement"), in which UM agreed to (1) purchase a Zeus system for $695,000 and (2) rent a second Zeus system for six months for one dollar per month, with an option to purchase the rented Zeus at a reduced price. The Agreement also gave UM product warranty, service and support for one year on the purchased Zeus and

an option to purchase additional warranty support.  The Agreement said that CMI and UM would use "good faith efforts" to establish UM as a leading robotics training center.

UM rescinded the Agreement one week later, because UM had not complied with its internal policies for purchases; UM told CMI that it would reconsider the Agreement through its formal review process.  About two weeks later, UM re-executed the Agreement.

On 3 March 2003, CMI delivered to UM all of the products contemplated in the Agreement.  UM tested both Zeus systems and determined they were fully operational, but UM never used the Zeus systems.

On 6 March 2003, CMI and Intuitive executed a merger agreement.[1] Intuitive told both companies' customers that the merged company's product portfolio would include the Zeus system.  In July, Intuitive informed UM that Intuitive would no longer fund research and development for the Zeus system.  In August, Intuitive ended all FDA trials involving Zeus.  Intuitive did not seek to collaborate with UM on Zeus research and development initiatives.

---

[1] Intuitive and CMI had, from time to time, discussed the possibility of merger since early 2001 during settlement discussions about patent litigation.  In October 2002, CMI rejected Intuitive's merger proposal, and all merger discussions ceased.  At the time UM entered into the Agreement with CMI, no merger discussions were taking place.

Standard of Review

We review de novo a district court's grant of summary judgment. Evanston Ins. Co. v. Stonewall Surplus Lines Ins. Co., 111 F.3d 852, 858 (11th Cir. 1997).

Breach of Contract

UM claims Intuitive breached the Agreement by (1) not producing technological upgrades that would enable the ZEUS to operate with a "seventh degree of freedom"[2] or allow it to be used for urological and cardiac surgery; (2) not collaborating to establish UM as a leading robotic surgical center; and (3) delivering an obsolete, rather than cutting-edge, robotic surgical system.

UM attempts to establish breach with extrinsic evidence about discussions between UM and CMI, but UM must show that Intuitive violated the actual terms of the contract because the contract is unambiguous on its face. Under Florida law, if a written agreement is unambiguous, extrinsic evidence may not be used to alter its meaning. Carlon, Inc. v. Southland Diversified Co., 381 So. 2d 291, 293 (Fla. Dist. Ct. App. 1980).

The contract did not require CMI to continue producing the Zeus machine or technological upgrades. The contract's terms about product upgrades only

_____

[2]The "seventh degree of freedom" refers to enhancements in the equipment's mobility.

4

entitled UM to "[a]ll product software upgrades at no charge during the warranty, service and support term," and to "[a]ny additional requested hardware upgrades . . . at 75% of the current US List Price." UM has not presented evidence that Intuitive violated these terms.

UM also produced no evidence that Intuitive failed to collaborate to establish UM as a robotic surgical training center. UM never requested such collaboration, and the terms of the contract did not give Intuitive the responsibility to initiate collaboration.

UM cannot establish breach by claiming that Intuitive provided an obsolete, rather than cutting-edge, surgical system. The contract identified specific equipment that Intuitive would sell and deliver to UM. UM concedes that Intuitive delivered that equipment.

Because UM presented no evidence that Intuitive violated the Agreement's terms, the district court properly determined that UM's breach of contract claim failed.

Fraud Claims

UM alleges several fraud-based claims: constructive fraud, recision, fraud in the inducement, conspiracy to commit fraud, and a violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-313.

UM alleges that CMI (1) misrepresented the future vitality of Zeus, including that CMI would upgrade Zeus; (2) secretly deleted a contract provision about the seventh degree of freedom upgrade before giving UM the Agreement to sign; and (3) knew when it signed the Agreement that CMI would merge with Intuitive and that Intuitive would stop producing Zeus machines.

The district court denied these claims because it determined that no breach of contract had occurred and that CMI and Intuitive were not planning to merge when the Agreement was signed.

The district court properly disposed of the claims. UM freely signed the Agreement -- twice. The Agreement's provisions were clearly and unambiguously stated, and the Agreement did not require CMI to develop technological upgrades or to continue to manufacture the Zeus. Even if UM officials did not read the contract before signing it, that act does not excuse UM's duty to read the Agreement and know its contents. See, e.g., Jabour v. Calleja, 731 So. 2d 792, 795 (Fla. Dist. Ct. App. 1999).

UM does not establish a genuine issue of material fact about its claim that CMI knew about the merger and about Zeus's pending discontinuation when CMI signed the Agreement. The evidence indicates that Intuitive and CMI had ceased negotiations by 27 October 2002 and that negotiations did not begin again until 27 January 2003. In addition, Intuitive presented evidence that the decision to stop producing the Zeus was not made until late June 2003.

UM's strongest evidence that might undermine this set of facts is a statement made by Intuitive's president that he, after the merger, intended to eliminate the Zeus machine. But Intuitive did not make the Agreement with UM; CMI did. UM presents no other evidence to rebut Intuitive's evidence that the decision to discontinue Zeus was not made until late June. UM has not done enough. Therefore, UM's fraud claims were properly denied.

Promissory Estoppel Claim

UM contends that promissory estoppel is appropriate here because the written contract does not include CMI's assurances about the continued viability of the ZEUS system nor CMI's alleged promise to develop future upgrades. The district court, however, determined that promissory estoppel is improper because

the Agreement adequately covered -- and omitted -- CMI's disputed promises.  We agree.

Promissory estoppel is not available as a remedy when parties have a written contract addressing the relevant issues; the contract's silence about particular details is not controlling as long as the contract purports to address broadly the disputed issues.  See Advanced Mktg. Sys. Corp. v. ZK Yacht Sales, 830 So. 2d 924, 928 (Fla. Dist. Ct. App. 2002) (determining promissory estoppel was unavailable for claim that yacht broker failed to rebate part of his commission as promised orally because written contract covered  yacht's sale and broker's commission).  Here, the Agreement adequately addressed the terms of the sale of the Zeus systems, including the sale of any product upgrades and the efforts to establish UM as a robotics training center.

After reviewing the evidence, we conclude that the district court properly granted summary judgment to Intuitive on UM's breach of contract, fraud-based and promissory estoppel claims.

**AFFIRMED.**