**Silvio GARCIA, John Deviddio, Jr., Glennon Pataky, Dan Schoneck, Joanna Schoneck, Robert Montanari, and John Dunleavy, Plaintiffs,**

v.

**SANTA MARIA RESORT, INC., All Keys, Inc., d/b/a Century 21–All Keys, Ralph Sanchez, Daniel Sanchez, and Jason Barroso, Defendants.**

**Nos. 07–10017–Civ.**

United States District Court,
S.D. Florida,
Miami Division.

Nov. 15, 2007.

Robert Howard Cooper, Robert H. Cooper PA, Miami, FL, for Plaintiffs.

Edwin A. Scales, III, Key West, FL, Julie E. Singer, Denis Durkin, Baker & Hostetler, Orlando, FL, Robert I. Chaskes, Christopher S. Carver, Ryan Roman, Akerman Senterfitt, Miami, FL, for Defendants.

### *ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS*

JAMES LAWRENCE KING, District Judge.

THIS MATTER came before the Court on Defendants All Keys, Inc., Ralph Sanchez, Daniel Sanchez, and Jason Barroso's Motion to Dismiss First Amended Complaint and Incorporated Memorandum of Law [D.E. # 32] and Defendant, Santa Maria Resort, Inc.'s Motion to Dismiss Amended Complaint and Incorporated Memorandum of Law [D.E. # 34] (collectively, the "Motions"). The Court heard

argument of counsel on the Motions on July 24, 2007. The Court then addressed Plaintiffs' Motion to [sic] Clarification of Ruling on Motions to Dismiss [D.E. # 44], through an Order Granting Plaintiffs Motion for Clarification and Final Order of Dismissal With Prejudice [D.E.# 56].

The Court has carefully reviewed the record, including (i) the First Amended Complaint [D.E. # 28], (ii) the Motions, (iii) the "Memorandum of Law in Opposition to Defendants All Keys Inc., Ralph Sanchez, Daniel Sanchez and Jason Barroso's Motion to Dismiss (Docket No. 32)" [D.E. # 40] and "Memorandum of Law in Opposition to Defendant Santa Maria's Motion to Dismiss (Docket No. 34)" [D.E. # 41] filed by plaintiffs Silvio Garcia, John Deviddio, Jr., Glennon Pataky, Dan Schoneck, Joanna Schoneck, Robert Montanari, and John Dunleavey, (iv) Defendants All Keys, Inc., Ralph Sanchez, Daniel Sanchez and Jason Barroso's Reply in Support of their Motion to Dismiss First Amended Complaint [D.E. # 42], and (v) the briefing on Plaintiffs' Motion for Clarification. Being fully advised in the premises, the Court hereby rules on the Motions.

## I. PROCEDURAL BACKGROUND

Plaintiffs Silvio Garcia, Chris Garcia, John Deviddio, Jr., Glennon Pataky, Dan Schoneck, Joanna Schoneck, and Robert Montanari initiated this action on March 28, 2007, by filing the Complaint [D.E. # 1] against defendant Santa Maria Resort, Inc. ("Santa Maria"), and defendants All Keys, Inc., Ralph Sanchez, Daniel Sanchez, and Jason Barroso (collectively, "All Keys Defendants"). The Court has federal question jurisdiction under 28 U.S.C. § 1331 because Count I of the operative Amended Complaint (which was also Count I of the original Complaint) alleges violations of § 10 of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder,

over which the Court has exclusive jurisdiction. See 15 U.S.C. § 78aa. The Court also has federal question jurisdiction because current Count II (which was Count IV of the original Complaint) asserts violations of the Interstate Land Sales Act ("ILSA"), 15 U.S.C. § 1701, et seq., over which the Court has concurrent jurisdiction. See 15 U.S.C, § 1719. The Court has jurisdiction over the non-federal claims pursuant to 28 U.S.C. § 1367.

The gist of the action is the plaintiffs' claim that each "Purchase Contract–The Santa Maria Resort Condominium" ("Purchase Contract") with Santa Maria for units in a condominium gives rise to assorted causes of action which, inter alia, entitle the plaintiffs to escape their obligations under the Purchase Contracts and to the return of condominium deposits of approximately $240,000 each. Except for plaintiff Dunleavy (who was added as a plaintiff with the amendment), each plaintiffs' Purchase Contract is an exhibit to the initial Complaint. That nine-count Complaint asserted four counts against all of the defendants: (i) Count I, alleging violations of § 10 of the 1934 Act and Rule 10b–5; (ii) Count II, alleging violations of § 17(a) of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. § 77q(a); (iii) Count III, alleging violations of § 12(2) of the 1933 Act, 15 U.S.C. § 77–1(2); and, (iv) Count V, alleging violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, et seq. Three counts were brought only against Santa Maria: (i) Count IV, alleging violations of ILSA; (ii) Count VIII, alleging breach of contract; and (iii) Count IX, alleging false advertising in violation of Fla. Stat. § 720.402. The last two counts were brought only against the All Keys Defendants: (i) Count VI, alleging negligence, and (ii) Count VII, alleging negligent retention against All Keys for retain-

ing the individual All Keys defendants as employees.

In response to Santa Maria's and the All Keys Defendants' motions to dismiss the Complaint [D.E. #s 11, 16 & 17, respectively], plaintiffs and defendants agreed to a proposed order dismissing the Complaint [*see* D.E. #20] and the Court dismissed the Complaint with leave to amend [*see* D.E. #21].

The First Amended Complaint revised the list of plaintiffs slightly and dropped Counts II and III (the 1933 Act counts), and VII (the negligent retention count against All Keys); however, the gist of the claims remains the same. Although the Purchase Contracts are not attached to the pleading, the copies filed with the initial Complaint are "incorporated ... by reference." *See* Amd.Compl. at ¶ 26(i). Former plaintiff Chris Garcia is omitted and plaintiff John Dunleavy is added; therefore, the plaintiffs are now Silvio Garcia, John Deviddio, Jr., Glennon Pataky, Dan Schoneck, Joanna Schoneck, and Robert Montanari (collectively, "Plaintiffs")Along with the new plaintiffs, new counts for negligence, false advertising, constructive trust, and declaratory relief are added.

Thus, the following claims are presently before the Court: Count I, asserting Rule 10b–5 claims against all defendants; Count II, asserting ILSA claims against Santa Maria; Count III, asserting FDUTPA claims against all defendants; Count IV, asserting negligence against the All Keys Defendants; Count V, asserting breach of contract against Santa Maria and seeking rescission of the Purchase Contracts; Count VI, asserting false advertising in violation of Fla. Stat. § 720.402 against Santa Maria; Count VII, asserting entitlement to constructive trusts and equitable liens with respect to Plaintiffs' deposits; and, Count VIII, seeking a declaratory judgment that the Purchase Contracts are unenforceable under Florida's Statute of Frauds.

Defendants move to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(3), and 12(b)(6) on several grounds. In addition to seeking dismissal for failure to satisfy the applicable pleading standards, including the stringent standards established by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the defendants move to dismiss on the grounds that (i) the Rule 10b–5 claims (in Count I) of plaintiffs Garcia, Deviddio, Jr., Pataky, Montanari, and Dunleavy in Count I are barred by the applicable statute of limitations; (ii) the Rule 10b–5 claims of all of the Plaintiffs are barred because no "investment contract" was at issue and, even if the Purchase Contracts constituted "investment contracts," Count I fails under the "bespeaks caution" doctrine; (iii) the Rule 10b–5 claims and the state law claims for FDUTPA violations and negligence fail as a matter of law for lack of reliance; and (iv) absent Count I, venue is improper in this Court because of the mandatory venue clause in the Purchase Contracts. Santa Maria seeks dismissal of the counts brought only against it on the grounds that (i) the ILSA claim in Count II fails because no misrepresentations on which Plaintiffs could have relied were made and all necessary disclosures were provided; (ii) the breach of contract claim in Count V fails because no material change in the project occurred; (iii) the false advertising claim in Count VI fails because there could be no reasonable reliance on any alleged misstatement in any advertisement; (iv) the constructive trust and equitable lien claims in Count VII are barred by the terms of the Purchase Contracts, which provide an adequate remedy at law; and (v) the Statute of Frauds argument in Count VIII is meritless since Plaintiffs received all of the required writings.

## II. STANDARD OF REVIEW

Three pleading standards apply to the Motions. Not only does the regular Fed. R.Civ.P. 8 standard applicable to every claim apply, but the heightened pleading standards for securities fraud claims applies to Count I. In addition, to the extent that claims sound in fraud, Fed.R.Civ.P. 9(b) must also be satisfied.

Both the Rule 8 and securities fraud pleading standards have been refined recently by the Supreme Court. Although it remains the case that a plaintiffs allegations must be accepted as true, the standard for pleading all claims in federal court is no longer the "no set of facts" phraseology of *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Supreme Court decided in May 2007 that "this famous observation has earned its retirement." *Bell Atlantic Corp. v. Twombly*, —— U.S. ——, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007). Now, to satisfy Rule 8(a), a plaintiff must plead "enough facts to state a claim for relief that is plausible on its face," and where plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 1974.

One month after issuing the *Twombly* decision, the Supreme Court clarified the "[e]xacting pleading requirements" for Rule 10b–5 claims established by the PSLRA in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, —— U.S. ——, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). As explained by the Court:

> The [PSLRA] requires plaintiffs to state with particularity both the facts constituting the alleged violation, and facts evidencing scienter, *i.e.*, the defendant's intention to deceive, manipulate, or defraud.... As set out in § 21D(b)(2) of the PSLRA, plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2).... To qualify as "strong" within the intendment of § 21D(b)(2), we hold, an inference of scienter must be cogent and *at least as compelling* as any opposing inference of nonfraudulent intent.

127 S.Ct. at 2504–5 (other quotations and citations omitted; emphasis added). "A complaint will survive ... only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 2510.

Thus, at this motion to dismiss stage, *Twombly* requires the Court to find that Plaintiffs' claims are "plausible on [their] face" and *Tellabs* requires the Court to balance competing inferences and find the inference of scienter "at least as compelling as any opposing inference." It is these newly-refined standards that the Court must apply to the First Amended Complaint; as set forth below, Plaintiffs' claims do not meet these standards or, with respect to the claims based in fraud, Rule 9(b).

## III. DISCUSSION

### *Factual Background*

As alleged in the First Amended Complaint, Garcia, Pataky, the Schonecks, Deviddio, Dunleavy, and Montanari ("Plaintiffs") entered into separate pre-construction Purchase Contracts with defendant Santa Maria to acquire units in "The Santa Maria Resort Condominium" being developed in Key West, Florida. Defendant All Keys served as Santa Maria's real estate agent; D. Sanchez, R. Sanchez, and Barroso were the individual All Keys agents who dealt with Plaintiffs.

In their most specific allegations, Plaintiffs allege that "one or more of the plaintiffs" were told by D. Sanchez, R. Sanchez, and Barroso that their Purchase Contracts

were for prices "below what the units would sell for once construction was underway...." Plaintiffs also allege that D. Sanchez, R. Sanchez, and Barroso "stated to plaintiffs that all the plaintiffs had to do was sign an agreement to purchase the units ... and furnish the applicable deposit, and that they did not even have to bother reading the Agreements as they would never need to close on the units because Santa Maria would 'flip' their contracts for them after all of the units were under contract and construction commenced; thereby making the plaintiffs a profit of several hundred thousand dollars."

Plaintiffs also allege that "Defendants" claimed that they had an agreement with a management company for an adjacent property to rent units for unit owners, that the common management would result in excess rentals for Santa Maria unit owners, that unit owners would have access to the adjacent property's amenities, that the condominium was a residential building, and that the condominium complied with the applicable building code requirements. Plaintiffs further allege that, again, "Defendants" advertised that they had contracted with a "long established high-end restaurant called The Queens Table [to] operate out of the Santa Maria resort."

Plaintiffs claim they entered into the Purchase Contracts based on these representations, paying substantial deposits and committing to purchase prices exceeding one million dollars: Garcia ($239,000/$1,195,000), Deviddio and Montanari ($239,000/$1,195,000), Pataky ($255,000/$1,275,000), the Schonecks ($260,000/$1,300,000), and Dunleavy ($256,000/ 1,280,000). Five of the seven plaintiffs executed their Purchase Contracts over two years before filing this action on March 28, 2007: Garcia (12/17/04), Deviddio and Montanari (12/29/04), Dunleavy (1/3/05), and Pataky (2/22/05). The Schoneck's Purchase Con-

tract was executed on March 29, 2005, just within the two-year window.

The Purchase Contracts contain several provisions directly applicable to Plaintiffs' allegations. Most notably, each Purchase Contract clearly states on the first page *and* on the last page—directly above each plaintiff's signature—in capital letters and bold font as follows:

**ORAL REPRESENTATIONS CANNOT BE RELIED UPON AS CORRECTLY STATING THE REPRESENTATIONS OF THE DEVELOPER. FOR CORRECT REPRESENTATIONS, REFERENCE SHOULD BE MADE TO THIS CONTRACT AND THE DOCUMENTS REQUIRED BY SECTION 718.503, *FLORIDA STATUTES,* TO BE FURNISHED BY A DEVELOPER TO A BUYER OR LESSEE.**

*Id.* at 1, 12 (emphasis in original). In less prominent text, along with several other representations in the section entitled "Purchaser's Representations," each plaintiff represents that:

Purchaser has not relied upon any prior agreements or representations made by anyone other than Developer, or oral statements (*including oral statements of sales representatives* ), except as specifically stated in this Contract.

*Id.* at ¶ 11(b) (emphasis added). In addition,

Purchaser ... represents that *Purchaser is purchasing a Unit for the personal use of Purchaser* and Purchaser's family members and guests only, to hold for an indefinite time, and *with no expectation of investment potential* or deriving any profit or tax advantage therefrom whether through income, appreciation or otherwise and with no expectation that Purchaser will receive any assistance from the Developer in the rental of ac-

commodations or the resale of the Purchaser's Unit.

*Id.* at ¶ 11(a) (emphasis added). The Purchase Contracts further provide, in bold text,

> **The rental of Units is permitted under the Declaration. This Condominium may be operated as a resort condominium. Do not buy a Unit in this Condominium without an expectation of transient occupancy that may include nightly rentals.**
>
> **Developer makes no representations whatsoever regarding short term rentals, rental rates, or the ability to rent the Unit. The purchase of a Unit should be based on its value to the purchaser, and not considered for purposes of acquiring an appreciating or income-producing investment or with an expectation that the Unit may be rented or sold.**

*Id.* at ¶ 20 (emphasis in original).

Significantly, each Purchase Contract also contains a broad merger clause:

> This contract and the Condominium Documents represent the entire agreement between the parties and supersedes all prior memoranda, correspondence, conversations, and negotiations between the parties to this Contract. There are no oral or written understandings, warranties or representations between the parties that are not expressly contained in this contract.

*Id.* at ¶ 13. Finally, each Purchase Contract states that

> [t]he Circuit and County Courts of the 16th Judicial Circuit, in and for, Monroe County, Florida ... will be the exclusive fora for any dispute, proceeding, suit or legal action concerning the interpretation, construction, validity, enforcement, performance of, or related in any way to, this Contract or any other agreement or instrument executed in connection with this Contract.

*Id.* at ¶ 26.

Subsequent to execution of the Purchase Contracts, Plaintiffs claim to have discovered that the condominium was built as a tourist resort and not a residential resort, that the condominium would not have beach access and access to other amenities of the adjacent properties, and that the adjacent property would be undergoing "a major three to four year renovation commencing on or around the same time [of] completion of the Santa Maria condominium, thus making it extremely difficult if not impossible for any of the condominium units to be resold. Santa Maria was also aware that the [adjacent property] would not be operating during this renovation period." Plaintiffs further claim that a promised "national sales campaign" never occurred, that the Queens Table was switched for a different restaurant, and that the building did not comply with building codes or the terms of the Purchase Contracts.

Plaintiffs claim to have relied on the alleged misrepresentations, including particularly the alleged statement by R. Sanchez, D. Sanchez, and Barroso that they "did not even have to bother reading the [Purchase] Agreements," and, as a result "did not read the Agreements, did not get professional legal advice regarding the Agreements, and ignored the language and disclaimers in the Agreements as they were assured they would never have to close as their contracts would be resold at a higher dollar amount prior to closing." As a result of the alleged misrepresentations and omissions, Plaintiffs brought suit, asserting the eight causes of action detailed above.

### Analysis

On its face, this is a case of buyer's—or, to be technical, several buyers'—remorse.

Guided by the Supreme Court's instruction that claims in general must be "plausible" and that Rule 10b–5 claims must be "cogent and at least as compelling as any opposing inference of nonfraudulent intent," with the added gloss that all claims based in fraud must satisfy Rule 9(b), the Court concludes that the First Amended Complaint must be dismissed with prejudice in its entirety in accordance with the pleading standards and applicable law.

### A. Count I Fails for Several Independent Reasons

#### 1. The Statute of Limitations Bars the Claims of All Plaintiffs Except for the Schonecks

Count I asserts violations of § 10 of the 1934 Act and Rule 10b–5 on behalf of each Plaintiff. *See* Amd.Compl. at ¶¶ 47–68. Through § 804 of the Sarbanes–Oxley Act of 2002, Pub.L. No. 107–204, Congress amended the statute of limitations for § 10 claims, which is now "2 years after the discovery of the facts constituting the violation; or . . . 5 years after such violation." 28 U.S.C. § 1658(b). Consequently, because plaintiffs Garcia, Deviddio, Jr., Pataky, Montanari, and Dunleavy entered into their respective Purchase Contracts more than two years before filing suit, if the Purchase Contracts were sufficient to put them on inquiry notice with respect to their securities fraud claims, § 1658(b) bars their claims.

■ "Inquiry notice in [this circuit] occurs when there is factual evidence of the *possibility* of securities fraud that would cause a reasonable person to investigate whether his or her legal rights had been infringed. Actual proof of securities fraud is not required for inquiry notice." *Tello v. Dean Witter Reynolds, Inc.,* 494 F.3d 956, 968 (11th Cir.2007) (citing *Tello v. Dean Witter Reynolds, Inc.* 410 F.3d 1275, 1283 (11th Cir.2005)) (italics in original). Here, the Purchase Contracts clearly relate to—and, indeed, directly contradict—Plaintiffs' misrepresentation claims. Therefore, the Purchase Contracts were more than sufficient to put Plaintiffs on inquiry notice of their asserted securities fraud claims.

Plaintiffs argue that because the individual defendants told them not to "bother" reading the Purchase Contracts, Plaintiffs cannot be deemed to be on inquiry notice of the provisions of the agreements. *Franze v. Equitable Assurance,* 296 F.3d 1250 (11th Cir.2002), rejects the equivalent argument and, although it applies a shorter limitations period, is dispositive. *See id.* at 1254 (applying a one-year period). In *Franze,* the Eleventh Circuit found that the plaintiffs' Rule 10b–5 claims arising from the purchase of variable life insurance policies were barred because the plaintiffs "could have discovered the alleged misrepresentations simply by reading [the policies and prospectus]." *Id.* at 1255. Moreover, the plaintiffs

> were put on inquiry notice despite the fact that they both testified that they did not read any of the documents that [defendant] gave them. *It was their responsibility to read these documents,* and, had they done so, they could have discovered the alleged misrepresentations.

*Id.* (emphasis added). *Cf. Tello,* 494 F.3d at 970 (citing *Franze,* 296 F.3d at 1254) (plaintiff was on inquiry notice upon reading article regarding stock fraud). Similarly, here, Plaintiffs cannot escape the terms of the Purchase Contracts simply because they allege they were told not to "bother" reading the agreements.

Contrary to Plaintiffs' arguments, whether they read them or not, Plaintiffs are charged with knowledge of the terms of Purchase Contracts, which agreements put them on inquiry notice with respect to the alleged fraud. Accordingly, as a mat-

ter of law, upon execution of the Purchase Contracts, the statute of limitations began running. Therefore, any claims plaintiffs Garcia, Deviddio, Jr., Pataky, Montanari, and Dunleavy could possibly have under Section 10 or Rule 10b–5 are time-barred, and Count I must be dismissed with prejudice as to them.

### 2. The Purchase Contracts Are Not "Investment Contracts"; Therefore, the Federal Securities Laws Are Inapplicable

Count I seeks relief under the federal securities laws; therefore, only if the transactions before the Court fall within the ambit of those laws could Plaintiffs have a federal securities claim. These laws are not a panacea for every alleged transactional wrong, however, because "federal securities laws were not intended to provide a federal remedy for all fraud or misconduct arising out of a commercial transaction." *Haddad v. Rav Bahamas, Ltd.*, 431 F.Supp.2d 1278, 1284 (S.D.Fla. 2006) (Seitz, J.). Here, dissatisfied with the current state of the Florida condominium market, Plaintiffs seek to escape their Purchase Contract commitments by asserting that the contracts are actually "investment contracts" governed by federal securities laws. Plaintiffs are mistaken; therefore, they have no claim under the federal securities laws.

■ The test for whether an agreement constitutes an "investment contract" for purposes of federal securities laws involves two inquiries: (i) whether the investor is investing in a "common enterprise" and (ii) whether the investor is led to expect profits "solely from the efforts of the promoter or a third party." *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946); *see also United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 852, 95 S.Ct. 2051, 2060–61, 44 L.Ed.2d 621 (1975). Signifi-

cantly, where the primary motivation for purchasing a condominium is personal use, "the securities laws do not apply." *Forman*, 421 U.S. at 852–3, 95 S.Ct. at 2060–61 (emphasizing the fact that an "Information Bulletin" distributed to prospective residents emphasized personal use and made no mention of investing). Moreover, where the materials provided to purchasers "do not emphasize the investment value of the lots," investment contracts do not exist, which bars application of the federal securities laws. *Rice v. Branigar Org., Inc.*, 922 F.2d 788, 790–91 (11th Cir.1991).

■ Not only do the Purchase Contracts not emphasize investment value, each Plaintiff specifically confirmed that s/he was purchasing the condominiums for "personal use." *See id.* at ¶ 11(a). Furthermore, "[u]nder the definition of 'investment contract' as developed by the Court in *Howey* and *Forman*, the sale of a condominium generally would not involve an investment contract." *Bender v. Cont'l Towers Ltd. P'ship*, 632 F.Supp. 497, 500 (S.D.N.Y.1986). And, where the purchaser of a condominium expresses the intention of reselling at a higher price, federal securities law is not implicated. *Id.* at 501. Rather, such a purchaser is "drawn in by an expectation of appreciation in value" rather than an expectation of profits "solely from the efforts of a promoter or a third party." *Id.* (quoting *Johnson v. Nationwide Indus., Inc.*, 450 F.Supp. 948, 953 (N.D.Ill.1978); *Howey*, 328 U.S. at 298–99, 66 S.Ct. at 1103).

In the Purchase Contracts, Plaintiffs stated that they entered into those agreements with no expectation of profits and understanding that any such profits would be realized from the Plaintiffs' own actions and from appreciation in market value wholly outside of Defendants' control. *See, e.g., id.* at ¶ 11(a). Therefore, the Purchase Contracts are not "investment

contracts" for purposes of the federal securities laws. Accordingly, because no security governed by § 10 is implicated by Plaintiffs' claims, Count I must be dismissed with prejudice as to all Plaintiffs.

3. Plaintiffs' Securities Claims Are Barred by the PSLRA's "Exacting Pleading Requirements" as Interpreted by the Supreme Court in *Tellabs*

In *Tellabs*, the Supreme Court clarified the "[e]xacting pleading requirements" applicable to a Rule 10b–5 claim imposed by the PSLRA, which requires a plaintiff to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). As interpreted by Supreme Court, this requires "an inference of scienter [to] be cogent and *at least as compelling* as any opposing inference of nonfraudulent intent." 127 S.Ct. at 2504–5 (emphasis added). Furthermore, "in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court *must* take into account plausible opposing inferences"; in other words, at the motion to dismiss stage, a district court "*must* consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Id.* at 2509–10 (emphasis added). Moreover, "omissions and ambiguities count against inferring scienter, for plaintiffs must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.' § 78u–4(b)(2)." *Id.* at 2511.

■ Plaintiffs' allegations do not come close to meeting the *Tellabs* standard. Plaintiffs do not even identify which defendant made representations to which plaintiff. Indeed, as the alleged representations were, in Plaintiffs' words, made "to *one or more* of the plaintiffs," Amd.Compl. at ¶ 21 (emphasis added), it is a more than

reasonable inference that certain plaintiffs never heard the misrepresentations. Furthermore, given the disclaimers of reliance on oral misrepresentations by Plaintiffs in the Purchase Contracts, not only is the inference that Plaintiffs are suffering from buyers' remorse and seeking to use the federal securities laws to escape their obligations under those contracts more compelling than an inference of intent to defraud, it is the *only* plausible inference. Therefore, *Tellabs* mandates dismissal of Count I.

4. The "Bespeaks Caution" Doctrine Mandates Dismissal of Count I

■ Even were Plaintiffs' conclusory allegations found to meet the *Tellabs* standard, Count I fails because defendants are protected by the common-law "bespeaks caution" doctrine, which was expressly adopted by the Eleventh Circuit in *Saltzberg v. TM Sterling/Austin Assocs., Ltd.,* 45 F.3d 399 (11th Cir.1995). This doctrine provides that "when an offering document's projections are accompanied by meaningful cautionary statements and specific warnings of the risks involved, the language may be sufficient to render the alleged omissions or misrepresentations immaterial as a matter of law," where such statements "[are] not boilerplate and ... not buried among too many other things, but [are] explicit, repetitive, and linked to the projections about which plaintiffs complain." *Saltzberg,* 45 F.3d at 400. Furthermore, if cautionary language is included, a defendant's state of mind is irrelevant. *Cutsforth v. Renschler,* 235 F.Supp.2d 1216, 1227 (M.D.Fla.2002).

■ Plaintiffs merely allege that they were told that "once the building was under construction, prices would increase dramatically as they were contracting at a below market price...." *See* Amd.Compl. at ¶ 32. However, the cautionary lan-

guage—*i.e.*, the disclaimers on the first page and the last page (right above Plaintiffs' signatures) does not just caution, it *contradicts* Plaintiffs' assertions. The Purchase Contracts expressly state that:

Purchaser ... represents that *Purchaser is purchasing a Unit for the personal use of Purchaser* and Purchaser's family members and guests only, to hold for an indefinite time, and *with no expectation of investment potential* or deriving any profit or tax advantage therefrom whether through income, appreciation or otherwise and with no expectation that Purchaser will receive any assistance from the Developer in the rental of accommodations or the resale of the Purchaser's Unit.

*Id.* at ¶ 11(a) (emphasis added). Accordingly, even if there had been any predictions as to the future of the real estate market, such statements were accompanied by explicit cautionary statements in the Purchase Contracts; therefore, any such predictions cannot form the basis for a federal securities law claim. *See, e.g., Cutsforth*, 235 F.Supp.2d at 1238–39 (statements that an acquisition will reflect "dynamic growth" and add "enhanced value" are not actionable, as they are "vague, optimistic statements" on which investors typically do not rely).

Furthermore, the cautionary language in the Purchase Contracts is not buried amongst other provisions and it is repetitive; indeed, it could not be clearer. Plaintiffs were expressly forewarned that they should not enter into the Purchase Contract for investment purposes and should not expect an economic benefit from the purchase of a unit; in fact, in the language set out above, they expressly represented that they were *not* doing so. *See id.* ¶ 11(a). Accordingly, "in light of the cautionary language in this case, plaintiffs cannot show the necessary misstatement or omission of a material fact." *Saltzberg*, 45 F.3d at 400. Therefore, Count I fails

under the "bespeaks caution" doctrine and is dismissed with prejudice.

**B.** *Count I, Count II, Count III, Count IV & Count VI—the Claims of Fraud and Misrepresentation—Are Not Plead with Particularity and Any Reliance Is Unreasonable as a Matter of Law*

**1. Plaintiffs Fail to Plead Fraud and Misrepresentation with the Detail Required by the Federal Rules**

In addition to the pleading requirements established by the PSLRA, Fed.R.Civ.P. 9(b), applicable to both the federal and state law claims, requires particularity in pleading that is absent from the Amended Complaint. *See, e.g., Advisor's Capital Invs., Inc. v. Cumberland Cas. & Sur. Co.*, No. 8:05–CV–404–T–23MAP, 2007 WL 220189 at *4 n. 9 (M.D.Fla. Jan. 26, 2007) (citing *Harrison Enters., Inc. v. Moran*, No. 97–4362–CIV, 1999 WL 1211753 at *3 (S.D.Fla. Aug. 30, 1999)). Count I (the federal securities law claim), Count II (the ILSA claim), Count III (the FDUTPA claim), Count IV (the negligent misrepresentation claim), and Count VI (the Florida false advertising claim) fail to satisfy the mandates of Rule 9(b).

In order to comply with the requirements of Rule 9(b), Plaintiffs must set forth

(1) precisely what statements were made in what documents or oral representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Pafumi v. Davidson,* No. 05–61679–CIV, 2007 WL 1729969 at *2 (S.D.Fla. June 14, 2007) (Cohn, J.) (citing *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001)). Plaintiffs' allegations clearly lack the required particularity because, among other things, they omit any mention of time, place, and identity of speaker. *See, e.g.,* Amd.Compl. at ¶¶ 19, 21, 22, 25, 27, and 31–34. Therefore, Rule 9(b) mandates dismissal of Count I, Count II, Count HI, Count IV, and Count VI.

2. Plaintiffs Could Not Have Reasonably Relied on Any Alleged Oral Misrepresentations

■ These claims should be dismissed with prejudice, however, because, as a matter of law, Plaintiffs could not reasonably have relied on any of the alleged misrepresentations. "[R]eliance on fraudulent representations is unreasonable *as a matter of law* where the alleged misrepresentations contradict the express terms of the ensuing written agreement." *Eclipse Med., Inc. v. Am. Hydro–Surgical Instruments, Inc.,* 262 F.Supp.2d 1334, 1342 (S.D.Fla.1999) (Ryskamp, J.) (emphasis added; citing *Barnes v. Burger King Corp.,* 932 F.Supp. 1420, 1428 (S.D.Fla. 1996) (Ungaro–Benages, J.)); *Acquisition Corp. of Am. v. FDIC,* 760 F.Supp. 1558, 1561 n. 6 (S.D.Fla.1991) (Nesbitt, J.). In a similar context, this Court has previously held that

[a] party has no right to rely upon alleged oral misrepresentations that are adequately covered and expressly contradicted in a later written contract. *Hillcrest Pacific Corp. v. Yamamura,* 727 So.2d 1053, 1056 (Fla. 4th DCA 1999). Plaintiff's reliance upon oral statements which were at variance with the written documents were not reasonable as a matter of law. Accordingly, Plaintiffs FDUTPA claim must be dismissed.

*Rosa v. Amoco Oil Co.,* 262 F.Supp.2d 1364, 1368–69 (S.D.Fla.2003) (Moore, J.). Thus, *Rosa* counsels dismissal because, in the Purchase Contracts, each plaintiff expressly stated that:

Purchaser represents to the Developer that *Purchaser has not relied upon any prior agreements or representations made by anyone* other than Developer, or oral statements (*including oral statements of sales representatives* ), except as specifically stated in this Contract.

Purchase Contracts at ¶ 11(b) (emphasis added). No reliance could be reasonable in the face of this express statement; therefore, the fraud claims in Count I, Count II, and Count HI must be dismissed with prejudice.

■ As with fraudulent misrepresentation, reliance is a necessary element of negligent misrepresentation (Count IV). *See, e.g., Foreline Sec. Corp. v. Scott,* 871 So.2d 906, 910 (Fla. 4th DCA 2004) (reliance is a necessary element of claims for both fraud and negligent misrepresentation). Likewise, reasonable reliance is an element of Plaintiffs' claim against Santa Maria for false advertising in Count VI. *See* Fla. Stat. § 718.506(1) ("Any person who, in *reasonable reliance* upon any *material* statement or information that is false or misleading and published by or under authority from the developer in advertising and promotional materials, including, but not limited to, a prospectus, the items required as exhibits to a prospectus, brochures, and newspaper advertising, pays anything of value toward the purchase of a condominium parcel located in this state shall have a cause of action to rescind the contract or collect damages from the developer for his or her loss prior to the closing of the transaction." (emphasis added)). Accordingly, Count IV and Count VI must also be dismissed with

prejudice because reliance is not possible as a matter of law.

Finally, Plaintiffs' express assertion that they relied on oral representations in lieu of reading their Purchase Contracts—even if true—underscores the fact that any reliance on oral statements is unreasonable as a matter of law. *See* Amd.Compl. at ¶ 23 ("Plaintiffs relied on these representations and *did not read the Agreements,* did not get professional legal advice regarding the Agreements, and ignored the language and disclaimers in the Agreements .... " (emphasis added)). "A party who signs an instrument is presumed to know its contents.... *He cannot avoid his obligations thereunder by alleging that he did not read the contract, or that the terms were not explained to him, or that he did not understand the provisions.*" *Benoay v. E.F. Hutton & Co.,* 699 F.Supp. 1523, 1529 (S.D.Fla.1988) (Paine, J.) (emphasis added; citations omitted). Florida law is thus clear that a party's failure to read an agreement cannot excuse that party's duty to both read the agreement *and* to "know its contents." *Univ. of Miami v. Intuitive Surgical, Inc.,* 166 Fed.Appx. 450, 453 (11th Cir.2006) (citing *Jabour v. Calleja,* 731 So.2d 792, 795 (Fla. 3d DCA 1999)).

Quite simply, Plaintiffs should not be rewarded for consciously choosing not to read their Purchase Contracts. Rather, as the Eleventh Circuit held in *Intuitive Surgical,* all plaintiffs are bound by the provisions of contracts they have executed, irrespective of whether they bother to read them. Hence, Plaintiffs' admitted failure to read their Purchase Contracts prevents them from satisfying the reliance element of their claims for securities fraud (Count I), ILSA violations (Count II), FDUTPA violations (Count III), negligent misrepresentation (Count IV), and false advertising (Count VI); therefore, these claims are dismissed with prejudice.

**C. *The Assorted State Law Claims against Santa Maria—Counts V, VII & VIII–Fail***

Finally, in the remaining counts of the First Amended Complaint, Plaintiffs bring a series of state law claims against Santa Maria. In Count V, Plaintiffs assert breach of contract. In Count VII, Plaintiffs seek a constructive trust and equitable lien. In Count VIII, Plaintiffs seek declaratory relief, asserting that the Purchase Contracts do not satisfy Florida's statute of frauds, Fla. Stat. § 725.01. Each of these claims must also be dismissed with prejudice.

Plaintiffs' breach of contract claim is premised on the assertion that Santa Maria breached the Purchase Contracts because it did not provide Plaintiffs with fifteen (15) days to rescind after being notified of "material and adverse" changes. Amd.Compl. at ¶ 92. However, as discussed *supra,* Plaintiffs have failed to identify any material misrepresentation that survives the clear language of the Purchase Contracts. Therefore, Count V is dismissed with prejudice.

In Count VII, Plaintiffs claim that they are entitled to a constructive trust and equitable lien for the amount of their deposits no longer held in escrow, as deposits in excess of 10% were permitted to be used for construction costs. *See* Amd.Compl. at ¶¶ 105–109. The equitable remedy of a constructive trust requires: (1) an express or implied promise, (2) the transfer of property and reliance thereon, and (3) unjust enrichment. *See Maurer v. Maurer,* 267 B.R. 639, 651 (M.D.Fla.2001). Plaintiffs have asserted, though unsuccessfully, an adequate remedy at law: the demand for return of their deposits. Therefore, they are not entitled to seek a constructive trust. *See Johns v. Gillian,* 134 Fla. 575, 184 So. 140, 145 (1938) (recognizing that "nor will such a lien

arise where there is an adequate remedy at law"). Furthermore, an equitable lien can only exist when a party has a "special right to a particular property" and there is no adequate remedy at law. *Maurer*, 267 B.R. at 652. Therefore, Count VII likewise fails, and is dismissed with prejudice.

Lastly, Count VIII seeks a declaration that the Purchase Contracts violate the Statute of Frauds. *See* Amd.Compl. at ¶¶ 110. This argument is meritless. The Purchase Contracts are in writing and sufficiently describe the real property to be purchased. Moreover, Florida law expressly provides for the selling of condominium units by a developer prior to recordation of the condominium documents. *See* Fla. Stat. §§ 718.202(1) & 718.503(*l*)(b)(*l*). Accordingly, Count VIII is also dismissed with prejudice.

## IV. CONCLUSION

Although this action is before the Court at the motion to dismiss stage, it is clear that Plaintiffs' claims cannot surpass the hurdle posed by the clear and express disclosures and representations of the Purchase Contracts. Allowing this case to proceed further would be a waste of the parties' time and resources, particularly given the well known expenses of discovery and litigation. Indeed, although in an antitrust context, the Supreme Court's admonition in *Twombly* is apt: "[I]t is one thing to be cautious before dismissing a[ ] ... complaint in advance of discovery, but quite another to forget that proceeding to ... discovery can be expensive." 127 S.Ct. at 1966–67 (internal citation omitted). Moreover, given the language of the Purchase Contracts, this case is particularly appropriate to terminate before the parties are forced to engage in expensive discovery proceedings.

Accordingly, after a careful review of the record, consideration of the argument of counsel, and being otherwise fully advised, it is

ORDERED, ADJUDGED, and DE-CREED that the First Amended Complaint is DISMISSED with prejudice. This Case is hereby CLOSED and all pending motions are DENIED as MOOT, with the exception that the Court reserves jurisdiction for the purposes of determining any entitlement to fees and costs and the Fed.R.Civ.P. 11 review mandated by the PSLRA. *See* 15 U.S.C. § 78u–4(c)(1).