**Gulbin DEGIRMENCI, Plaintiff,**

v.

**SAPPHIRE–FORT LAUDERDALE, LLLP, a Florida limited liability limited partnership; Altman Sapphire GP, LLC; Regions Financial Corporation, a Delaware corporation, Defendants.**

Case No. 09–60089–CIV.

United States District Court,
S.D. Florida.

Feb. 1, 2010.

Order Denying Reconsideration
April 20, 2010.

James Daniel Ryan, Ryan & Ryan Attorneys PA, North Palm Beach, FL, William Dunbar Tucker, Fort Lauderdale, FL, for Plaintiff.

Bernard Lewis Egozi, Joseph Harris Rose, Egozi & Bennett, PA, Aventura, FL, for Defendants.

### ORDER GRANTING MOTIONS TO DISMISS

WILLIAM P. DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon Defendants Sapphire–Fort Lauderdale, LLLP, Altman Sapphire GP, LLC, The Premier Sales Group, Inc., and Regions Financial Corporation's Motions to Dismiss [DE–67, 68, 69, 77, respectively]. The Court has carefully considered the Motions, Plaintiffs Responses [DE–103, 114, 115, 116], Defendants' Replies [DE–117, 118, 119, 120], and is otherwise fully advised in the premises.

### I. BACKGROUND

Plaintiff filed the instant action on January 16, 2009. On June 30, 2009, this Court entered an order Granting in Part and Denying in Part Defendants Sapphire–Fort Lauderdale, LLLP and Altman Sapphire GP, LLC's Motion to Dismiss. On

August 14, 2009, this Court entered an order Granting in Part Defendant Regions's Motion to Dismiss. Plaintiff filed the Amended Complaint on September 12, 2009.

Defendant Sapphire–Fort Lauderdale, LLLP ("Sapphire") is a Florida limited liability limited partnership, with its principal place of business in Broward County, Florida. Defendant Altman Sapphire GP, LLC ("GP") is the general partner and has its principal place of business in Palm Beach County, Florida. They were the developers of the project at issue (collectively referred to as "Developer"). Defendant Regions Financial Corporation ("Regions") is a bank holding company and a financial holding company. Defendant The Premier Sales Group, Inc. ("Premier") is a Florida corporation that was the broker for the developers.

According to the Amended Complaint, Plaintiff entered into a preconstruction agreement with Developer to purchase a condominium unit in the Fort Lauderdale Beach area on January 21, 2006. The sale was for a unit in the Sapphire Fort Lauderdale Condominium and the purchase price was $480,000.00. The project was billed as luxury condominiums. The Purchase Agreement ("Agreement") required a 20% escrow deposit and provided that Plaintiff would be given thirty days advance notice of the closing. The closing would occur only after construction was complete and a certificate of occupancy issued, and in any event, no later than January 31, 2010. By October 6, 2006, she paid the $96,000.00 escrow deposit.

The Agreement provides that in the event of a buyer's default, the Developer may retain 15% of the purchase price as liquidated damages *and seek specific performance.* Specifically it reads as follows:

[i]f Buyer defaults after fifteen percent (15%) of the Purchase Price, exclusive of interest, has been paid, Seller will refund to the Buyer any amount which remains from the payments Buyer made after subtracting fifteen percent (15%) of the Purchase Price, exclusive of interest. Any damage or loss that occurs to the Property while Buyer is in default will not affect Seller's right to liquidated damages. Buyer and Seller agree to this because there is no other precise method of determining Seller's damages. Seller may also seek to specifically enforce this Agreement.

Agreement [DE–4–2, Ex. 13 ¶ 13].

The Amended Complaint goes on to allege that Regions provided the mortgage loan for the acquisition of the property on which the Project is being constructed and is providing mortgage loans for the construction of the Project. By way of assignments, transfer of rights, and creation of security interests, the Developer allegedly has ceded Regions significant authority and control over the Project. Thus, Plaintiff alleges, Regions has obtained a "super priority" security interest in all Purchase Agreements and purchaser escrow deposits, including Plaintiff's. The Amended Complaint alleges that the net effect is that the Developer cannot modify or cancel any Purchase Agreement or return any escrow deposits without first obtaining Region's approval. Therefore, Plaintiff puts forth that Regions has thereby become subject to the Interstate Land Sales Full Disclosure Act ("ILSFDA").

In November 2008, Plaintiff informed the Developer that due to an adverse change in her personal financial circumstances, she would be unable to proceed with the purchase. She requested the return of her escrow deposit. The Developer refused, stating that it would not recognize her default until they gave her notice to close and she failed to do so. At that time, it would then retain the entire 20% escrow deposit. Developer informed

Plaintiff that Regions would not allow it to recognize any purchaser default until the issuance of a certificate of occupancy and that it would not agree to the return of any escrow funds. The Amended Complaint alleges that this is Regions' institutional policy as it has a financial disincentive to pay the deposits under standby letters of credit.

Count I is a claim for declaratory judgment that the Developer and Regions have and are anticipated to violate one or more of the following statutes under the ILSFDA: 15 U.S.C. §§ 1703(a)(1)(B)-(D) and 15 U.S.C. §§ 1703(a)(2)(A)-(C). She seeks a declaration that the Developer and Regions violated one or more statutes under the ILSFDA, a declaration that she is entitled to rescission, and an award of attorney's fees and costs pursuant to 15 U.S.C. § 1709 and the sales contract. Count II seeks an injunction against the Developer requiring it to make demand upon escrow agent Chicago Title Insurance Company to pay so much of plaintiff's escrow deposits as Plaintiff is determined to be entitled; an injunction against the Developer from further violations; an injunction against the Developer prohibiting it from seeking specific performance of the contract; a temporary injunction prohibiting Regions from the exercise of certain contractual rights over the Developer resulting in violations of plaintiff's rights under the ILSFDA; a permanent injunction prohibiting Regions from the exercise of certain contractual rights over the Developer with respect to Plaintiffs escrow deposit in violation of ILSFDA 15 U.S.C. § 1703(a)(2); and an injunction requiring Regions to pay under the letter of credit all sums due plaintiff in respect of her escrow deposits; and attorney's fees and costs pursuant to 15 U.S.C. § 1709 and/or the sales contract. Count III seeks rescission and the return of Plaintiff's deposit because the Developer has violated her rights under the ILSFDA—specifically, 15 U.S.C. §§ 1703(a)(1)(B)-(D) and 15 U.S.C. §§ 1703(a)(2)(A)-(C)—and thus that the Purchase Agreement is void and/or avoidable as against public policy. Plaintiff also seeks attorneys fees, prejudgment interest, and costs pursuant to 15 U.S.C. § 1709 and the sales contract. Count IV alleges two violations of Florida Statutes § 718.202. Plaintiff seeks rescission, the Court declaring the sales contract void, and for the return of her deposit plus interest and other damages pursuant to Florida Statutes § 718.202(5). Plaintiff is also seeking attorneys' fees and costs pursuant to Florida Statutes § 718.125. Count V seeks rescission and the return of her deposit because of Developer's false and misleading statements violated her rights under Florida Statutes § 718.506(1). Plaintiff is also seeking attorneys' fees and costs pursuant to Florida Statutes § 718.506(2). Count VI alleges that Developer's violation ILSFDA is a per se violation of FDUTPA. Plaintiff seeks an injunction enjoining the Developer from violating FDUTPA; an injunction enjoining the Developer from enforcing the sales contract; rescission of the contract; a declaratory judgment that the Developer has violated FDUTPA; a declaratory judgment that the Developer's failure to comply with ILSFDA and Florida Statutes Chapter 718 constitute violations of FDUTPA; and the return of her deposit. Plaintiff also seeks attorney's fees and costs pursuant to Florida Statutes § 501.211(2). Count VII claims that the Developer materially breached the contract, thereby excusing any further performance by the Plaintiff, Plaintiff seeks a full refund of all deposits and moneys paid by the Plaintiff pursuant to the contract. Plaintiff, if it is the prevailing party, seeks reasonable attorneys' fees, paralegal fees and costs (including on appeal) from the non-prevailing party, pursuant to the contract. Count VIII seemingly seeks a de-

claratory judgment that Plaintiff is in default, and then seeks specific performance requiring the Developer to perform the contract and return Plaintiff's deposit in excess of 15% of the sales price pursuant to the contract and awarding her attorneys fees, prejudgment interest, and costs pursuant to an unnamed Florida law. Count IX alleges the Developer is in anticipatory breach of the implied covenant of good faith under the sales contract concerning the viability of the Sapphire Fort Lauderdale Condominium Association. Plaintiff seeks rescission and the return of her deposit. Plaintiff also seeks her attorneys fees, prejudgment interest, and costs pursuant to an unnamed Florida law. Count X seeks an accounting and the attorneys fees, prejudgment interest, and costs pursuant to an unnamed Florida law and/or the sales contract. Count XI is a fraud in the inducement claim against the Developer. Plaintiff seeks rescission of the sales contract, the return of her deposit, damages including consequential damages, punitive damages, attorneys fees, prejudgment interest, and costs pursuant to an unnamed Florida law. Count XII is a claim for unjust enrichment against the Developer. Plaintiff seeks the return of her deposit and the award of prejudgment interest, costs, and for all other relief pursuant to which she is entitled under Florida law. Count XIII is an action against the Developer and Lender for declaratory relief as to the existence and priority of Plaintiff's equitable lien and the return of Plaintiff's deposit. Count XIV seeks the imposition of an equitable lien in favor of Plaintiff for the full amount of the deposits paid by the Plaintiff pursuant to the contracts, plus other damages, together with attorney fees and costs, pre-judgment interest, costs, on the real property and personal property owned by Developer. Count XV seeks the foreclosure on Plaintiff's equitable lien for the full amount as discussed in the previous Counts. Count XVI is the same as Count I, except it pertains only to Regions and only alleges a violation of 15 U.S.C. §§ 1703(a)(2)(A)-(C). Count XVII is an action against Regions for tortious interference. Plaintiff seeks damages, including an award for consequential and punitive damages. Count XVIII is a fraud in the inducement claim against Regions. Plaintiff seeks damages, punitive damages, and all other relief pursuant to which Plaintiff is entitled under Florida law. Count XIX is a fraud claim against Regions. Plaintiff seeks damages, including consequential damages, punitive damages, and all other relief pursuant to which Plaintiff is entitled under Florida law. Count XX is a fraud in the inducement claim against Premier. Plaintiff seeks damages, including consequential damages, punitive damages, and all other relief pursuant to which Plaintiff is entitled under Florida law. Count XXI is a fraud claim against Premier. Plaintiff seeks damages, including consequential damages, punitive damages, and all other relief pursuant to which Plaintiff is entitled under Florida law. Count XXII is no longer at issue because Plaintiff voluntarily dismissed Defendants Michael Lichtenfeld and The Galleria Collection, Inc., the only Defendants that this Count pertained to.

Counts I, II, III and XVI involve issues of federal law which this Court has original jurisdiction. The remaining seventeen counts[1] involve Florida law, which this Court does not have original jurisdiction over. The Amended Complaint contains more than four times as many state law claims than federal claims, thus the state

---

1. Count XXII, sounding in Florida law, is not included in the remaining counts as it is no longer at issue.

law claims predominate over the federal claims. Therefore the Court will first analyze whether any of the federal claims arc sufficient to withstand Defendants's Motions to Dismiss. If the Court dismisses all of the federal claims, the Court will decline supplemental jurisdiction over the remaining state claims. If the Court does not dismiss all of the federal claims, the Court will have to analyze whether it will accept supplemental jurisdiction over the remaining state claims as they clearly predominate the federal claims.

## II. *DISCUSSION*

### A. Complaint in its Entirety Violates Rule Against "Shotgun" Pleadings

■ Federal Rule of Civil Procedure 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief. A shotgun pleading is in no sense a short and plain statement of the claim as required by Rule 8. *Magluta v. Samples,* 256 F.3d 1282, 1284–85 (11th Cir.2001). A typical shotgun pleading "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.,* 305 F.3d 1293, 1295 (11th Cir.2002). With a shotgun pleading, it is virtually impossible to know which allegations of fact are intended to support which claims for relief. *Anderson v. Dist. Bd. of Trustees of Cent. Fl. Comm. Coll.,* 77 F.3d 364, 366 (11th Cir.1996). Shotgun pleadings impede the orderly, efficient and economic disposition of disputes as well as the court's overall ability to administer justice. *See Byrne v. Nezhat,* 261 F.3d 1075, 1128–1131 (11th Cir.2001); *Ebrahimi v. City of Huntsville Bd. of Educ.,* 114 F.3d 162, 165 (11th Cir.1997).

■ Much to the dismay of this Court, Plaintiff did not follow this Court's June 30, 2009 Order, asking Plaintiff, in amending her Complaint, to clearly state the facts of each violation and separate counts for each such violation. Plaintiff's Amended Complaint contains twenty-two counts and spans a total of 72 pages and 338 paragraphs. The first 232 paragraphs of the Amended Complaint contain allegations of fact that are adopted in full by the twenty-two counts. Each count contains factual allegations in addition to those set out in the first 232 paragraphs; each count also adopts the allegations of all preceding counts. Consequently, the allegations of fact that may be material to a determination of count one, but not count ten, are nonetheless made a part of count ten. Because Plaintiff has failed to separate out the allegations that apply to each count of this 232–paragraph Amended Complaint and have incorporated every preceding count into the counts that follow, Plaintiff's Amended Complaint is a typical shotgun pleading. This Court, *sua sponte,* is dismissing any counts not dismissed on other grounds as deficiently plead under the Federal Rules of Civil Procedure and require Plaintiff to correct this deficiency. *See Anderson,* 77 F.3d at 367 n. 5 (11th Cir.1996) ("the court, acting *sua sponte,* should have struck the plaintiff's complaint, and the defendants' answer, and instructed plaintiff's counsel to file a more definite statement.").

### B. Motion to Dismiss Standard

To adequately plead a claim for relief, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Under Federal

Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (abrogating *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955).

The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. *See Linder v. Portocarrero,* 963 F.2d 332, 334–36 (11th Cir.1992) (citing *Robertson v. Johnston,* 376 F.2d 43 (5th Cir.1967)). However, this is inapplicable if the allegations are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements ...". *Iqbal,* 129 S.Ct. at 1949. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint, and "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly,* 550 U.S. at 563 n. 8, 127 S.Ct. 1955 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)).

**C. Motion to Dismiss**

Defendants Sapphire and GP argue that all three of Plaintiff's ILSFDA counts pertaining to it, Counts I through III, fail as a matter of law, which necessitates dismissal of Counts IV through XV, as the Court must decline supplemental jurisdiction in the absence of a viable federal claim. Sapphire and GP additionally argue that even if Counts I through III are not dismissed, the twelve state law claims clearly predominate over the purported ILSFDA claims, and that the Court should decline supplemental jurisdiction over the state law claims. Defendant Regions argues similarly that Counts I, II, and XVI, all three of Plaintiff's ILSFDA claims pertaining to it, fail as a matter of law, which necessitates dismissal of Counts XIII through XV, and Counts XVII through XIX. In addition, Regions argues that Count XVI is duplicative of Count I, and should therefore be dismissed. The Court notes that Counts I, II, III, and XVI seem to be essentially the same cause of action, with different relief sought in each. Count XVI seems to be similar to Counts I, II, and III, except that it applies only to Regions and that it only alleges violations of 15 U.S.C. § 1703(a)(2)(A)-(C), not 15 U.S.C. § 1703(a)(1)(B)-(D).

If the Court retains supplemental jurisdiction over the state claims, Defendants argue that state counts should be dismissed on other grounds. GP argues that Counts I through V should be dismissed as to it as the Amended Complaint fails to allege that it is a "developer" or an "agent" of a developer under the ILSFDA or the Florida Condominium Act. Sapphire and GP argue that Counts V and XI should be dismissed for failure to state a claim sounding in fraud. Sapphire and GP argue that Count VI fails to state a claim under the Florida Deceptive and Unfair Trade Practices Act. Sapphire and GP argue that Counts VII and IX fail to state a claim for breach of contract. Sapphire and GP argue that Count VIII must be dismissed because Plaintiff is not entitled to seek specific performance and for failure of a condition precedent. Sapphire and GP argue that Count XII should be

dismissed because it fails to state a claim for unjust enrichment as there is an express contract between the parties. Sapphire, GP and Regions argue that Counts XIII, XIV, and XV should be dismissed because Plaintiff is not entitled to an equitable lien. Regions argues that Count XVII should be dismissed because Regions did not procure a breach of the sales contract. Regions argues that counts XVIII and XIX should be dismissed for failure to state a claim sounding in fraud. Defendant Premier argues that Counts XX and XXI should be dismissed for failure to state a claim sounding in fraud.

### D. Plaintiff's Claims for Relief under the ILSFDA

Plaintiff claims that Sapphire and GP violated 15 U.S.C. § 1703(a)(1)(B)-(D) of the ILSFDA and that Sapphire, GP, and Regions have violated 15 U.S.C. § 1703(a)(2)(A)-(C) of the ILSFDA. Sapphire, GP, and Regions move to dismiss Plaintiff's claims for relief under the ILSFDA, Counts I, II, III, and XVI of the Amended Complaint, for failure to state a claim upon which relief may be granted.

#### 1. Claims Based on Violations of 15 U.S.C. § 1703(a)(1)(B)-(D).

Plaintiff claims that Sapphire and GP violated 15 U.S.C. § 1703(a)(1)(B)-(D). These provisions provide as follows:

(a) Prohibited activities

It shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails—

(1) with respect to the sale or lease of any lot not exempt under section 1702 of this title—

(B) to sell or lease any lot unless a printed property report, meeting the requirements of section 1707 of this title, has been furnished to the purchaser or lessee in advance of the signing of any contract or agreement by such purchaser or lessee;

(C) to sell or lease any lot where any part of the statement of record or the property report contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein pursuant to sections 1704 through 1707 of this title or any regulations thereunder; or

(D) to display or deliver to prospective purchasers or lessees advertising and promotional material which is inconsistent with information required to be disclosed in the property report;

15 U.S.C. § 1703(a)(1)(B)-(D)

The Court will address each subsection in-turn.

##### a. 15 U.S.C. § 1703(a)(1)(B)

Defendants Sapphire and GP move to dismiss Plaintiff's claim of a violation of 15 U.S.C. § 1703(a)(1)(B), arguing that Plaintiff's claim for rescission is time-barred. 15 U.S.C. § 1703(a)(1)(B) makes it unlawful for a developer to sell or lease any lot in interstate commerce unless a printed property report, *meeting the requirements of section 1707,* has been furnished before the signing of a contract. The premise of Sapphire and GP's argument is based on its flawed interpretation of Plaintiff's Amended Complaint. Sapphire and GP interpreted Plaintiff's Amended Complaint to allege that the Defendants violated 15 U.S.C. § 1703(a)(1)(B) by not providing Plaintiff with a property report. In turn, Defendants argue Plaintiff should have brought the cause of action under 1703(c), which specifically pertains to the situation where a developer does not provide a property report. Sapphire and GP correctly assert that a claim under § 1703(c) is time barred. However the Court is puzzled by Defendants' interpretation as nowhere in the Amended Complaint does

Plaintiff allege she did not receive the property report. In fact, Plaintiff has alleged in her Amended Complaint that she has received the property report. (Amended Complaint, ¶¶ 81, 88, 96, 115, 213, 223). Although difficult to interpret due to the confusing nature of the Amended Complaint, Plaintiff seemingly is claiming that the property report failed to meet the requirements of section 1707. (Amended Complaint, ¶ 226). It is unclear from the Amended Complaint why the property report does not meet the requirements of Section 1707. Thus the Count must be dismissed. However the Court will allow Plaintiff another opportunity to properly allege a violation of 15 U.S.C. § 1703(a)(1)(B). Accordingly, claims pursuant to 15 U.S.C. § 1703(a)(1)(B) are hereby dismissed, with leave to amend. This would be the portions of Counts I, II, and III pertaining to those violations.

### b. 15 U.S.C. § 1703(a)(1)(C)

Defendants Sapphire and GP move to dismiss Plaintiff's claim of a violation of 15 U.S.C. § 1703(a)(1)(C), arguing that Plaintiff has not alleged that either the property report or the statement of record contained an untrue statement of material fact or material omission. Plaintiff, in her Response, counters that the property report contained a false statement concerning the return of Plaintiff's excess deposit, false statements concerning the construction mortgage, a false statement pertaining to the Developer's use of deposits in excess of 10% of the sales price, an omission of a material fact that the Developer is not Altman, and misleading statements concerning the nature and extent of the construction mortgage. The Court will address each of Plaintiff's contentions in turn.

### i. Statement Concerning Return of Plaintiff's Excess Deposit.

■ The property report states that the developer would return Plaintiff's excess deposit at the time of default. In December 2008, Plaintiff notified Sapphire that she could not and therefore would not close. Plaintiff, in her Response, argues that the notification put her in default and was thus owed the excess deposit. Sapphire and GP, the performing parties, argue that they do not have to declare Plaintiff in default. Regardless of whether Sapphire and GP have to declare Plaintiff in default, as the Court previously held in its June 30, 2009 Order, the failure to return the excess deposit is a breach of contract claim, not a claim under the ILSFDA. Accordingly, any ILSFDA claims premised on the failure to return the excess deposit are hereby dismissed with prejudice.[2]

### ii. Statements Concerning the Construction Mortgage

■ The property report states that the construction mortgage "is not presently encumbering the Condominium Property" and that in any event it would only secure funds used to construct the Sapphire Condominium Development. In Plaintiff's Response, she argues that because the construction mortgage was recorded on June 7, 2005, and had thus been encumbering the property for over seven months when Plaintiff signed the sales contract, the property report contained a false statement. Defendants do not address whether this statement constitutes a violation of the 15 U.S.C. § 1703(a)(1)(C). As discussed above, due to her shotgun pleading, Plaintiff has not sufficiently plead this violation of 15 U.S.C. § 1703(a)(1)(C) in the Amended Complaint. However, the Court finds

---

**2.** The Court notes that Plaintiff has also pleaded this as a breach of contract claim in Count VII, which is not being dismissed with prejudice.

that Plaintiff could plead facts sufficient to sustain a cause of action based on this violation. Accordingly, the 15 U.S.C. § 1703(a)(1)(C) claims premised on the statement that the construction mortgage is not encumbering the property are hereby dismissed without prejudice for failure to be pled with particularity.

### iii. Statement Pertaining to the Developer's Use of Deposits in Excess of 10% of the Sales Price

■ The property report states that the developer would use Plaintiff's deposit in excess of 10% of the sales price, if at all, only "for construction and development purposes." Plaintiff alleges that the developer used Plaintiff's deposit in excess of 10% of the sales price to pay for expenses other than construction and development expenses, such as advertising expenses, and/or the advance sales commissions. Sapphire and GP argue that any alleged improper expenditures of escrow funds do not constitute a valid claim under the ILSFDA but might constitute a breach of contract claim or a violation of Fla. Stat. § 718.202 as any misuse occurred after the property report was prepared and delivered to Plaintiff. The Court agrees with Defendants that this is a breach of contract claim or a claim under Fla. Stat. § 718.202; it is not a claim premised on a violation of § 1703(a)(1)(C) of the ILSFDA. Accordingly, any ILSFDA claims premised on the developer's use of deposits in excess of 10% are hereby dismissed without prejudice to be replead as a breach of contract claim and/or a claim under Fla. Stat. § 718.202.

### iv. Omission of Statement that the Developer is Not Altman

■ Plaintiff, in her Response, argues that because most of the marketing materials identified the developer as "The Altman Companies," and/or "Altman Development Corporation," the property report should have stated that neither of these entities are the developer. Plaintiff does not dispute that the property report correctly states the actual developer. Plaintiff does not cite to any statute or case law supporting her argument but instead simply concludes it. Sapphire and GP assert that not a single provision of the ILSFDA, including section 1707, requires the property report to identify parties who are not the developer. The Court agrees with Sapphire and GP and does not find Plaintiff's argument persuasive. Thus, to the extent any ILSFDA claims are premised on the omission of a statement that the developer is not Altman, they are hereby dismissed with prejudice.

### v. Statements Concerning the Nature and Extent of the Construction Mortgage

■ Plaintiff, in her Response and Amended Complaint, argues that the property report is internally inconsistent and in conflict with the sales contract on the issue of whether and to what extent a purchaser's individual unit and/or the common elements, and/or the condominium association property are subject to mortgage liens securing amounts borrowed by the Developer for the expenses associated with the acquisition, development, and construction of the Project. Sapphire and GP argue that these allegations are too nebulous to support a cause of action under § 1703(a)(1)(C) or any other section of the ILSFDA. The Court cannot discern from the Amended Complaint what Plaintiff is trying allege and Plaintiff's Response does not shed any light either. The Court agrees with Sapphire and GP that these allegations are too nebulous to support the cause of action. Accordingly, the § 1703(a)(1)(C) claims premised on the statements concerning the nature and extent of the construction mortgage are

hereby dismissed without prejudice, with leave to amend.

### c. 15 U.S.C. § 1703(a)(1)(D)

Sapphire and GP do not move to dismiss Plaintiff's claim of a violation of 15 U.S.C. § 1703(a)(1)(D), As discussed above, due to her shotgun pleading, Plaintiff has not sufficiently plead a violation of 15 U.S.C. § 1703(a)(1)(D) in the Amended Complaint. However, the Court finds that Plaintiff could plead facts sufficient to sustain a cause of action based on this violation. Accordingly, claims premised on 15 U.S.C. § 1703(a)(1)(D) are hereby dismissed, with leave to amend. This would be the portions of Counts I, II, and III pertaining to a violation of 15 U.S.C. § 1703(a)(1)(D).

### 2. Claims Based on Violations of 15 U.S.C. § 1703(a)(2)(A)-(C).

Plaintiff claims that Defendants Sapphire, GP, and Regions have violated 15 U.S.C. § 1703(a)(2)(A)-(C). These provisions provide as follows:

> (2) with respect to the sale or lease, or offer to sell or lease, any lot not exempt under section 1702(a) of this title [it shall be unlawful]:
>
> (A) to employ any device, scheme, or artifice to defraud;
>
> (B) to obtain money or property by means of any untrue statement of a material fact, or any omission to state a material fact necessary in order to make the statements made (in light of the circumstances in which they were made and within the context of the overall offer and sale or lease) not misleading, with respect to any information pertinent to the lot or subdivision;
>
> (C) to engage in any transaction, practice, or course of business which oper-

ates or would operate as a fraud or deceit upon a purchaser;

15 U.S.C. § 1703(a)(2)(A)-(C).

The alleged violations of 15 U.S.C. § 1703(a)(2)(A)-(C) are claims sounding in fraud. Sapphire, GP, and Regions move to dismiss Plaintiff's claims of violations of 15 U.S.C. § 1703(a)(2)(A)-(C) arguing that the Amended Complaint fails to allege two essential elements of fraud: (1) a material misrepresentation or omission and (2) reasonable reliance thereon. Sapphire, GP and Regions additionally argue that Plaintiff has failed to allege fraud with the requisite particularity as required by Rule 9(b).

### a. Material Misrepresentation or Omission

Plaintiff, in her Response, argues that Sapphire, GP, and Regions made the following material misrepresentations or omissions: misrepresentation as to the identity of the developer, the broker cooperation scheme, and the scheme to pull out profits leaving unit purchasers holding the bag.

### i. Misrepresentation as to the Identity of the Developer

Plaintiff argues that Sapphire, GP, and Regions violated 15 U.S.C. § 1703(a)(2)(A)-(C) by misrepresenting the identity of the developer. Defendants argue that the contract reveals that Sapphire is the "developer" of the condominium unit and thus there is no misrepresentation of the identity of the developer. The Court agrees. Where the allegations of a complaint are expressly contradicted by the plain language of an attachment to that complaint, the attachment controls, and the allegations are nullified. *International Star Registry of Illinois v. Omnipoint Marketing, LLC*, 510 F.Supp.2d 1015, 1022 (S.D.Fla.2007). The plain language of the contract and other documents, such as the

property report, expressly contradict any claim that Sapphire misrepresented to Plaintiff that it was not the developer. All parties concede that Sapphire was, in fact, the developer, thus the statement that Sapphire was the developer was not a misrepresentation. Thus, to the extent any 15 U.S.C. § 1703(a)(2)(A)-(C) claims are premised on misrepresentation as to the identity of the developer, they are hereby dismissed with prejudice.

#### ii. The Broker Cooperation Scheme

 In regards to the broker cooperation scheme, Plaintiff essentially alleges that Sapphire pays Premier a commission on units sold, who in turn pays a commission to any third-party brokers who bring in buyers. Plaintiff would have the Court believe that this scheme caused Plaintiff's broker to abandon his obligations to her by not informing Plaintiff that she had certain rights under the contract. Even if this were true, there are simply no allegations of a misrepresentation or omission and thus no allegations of fraud. Thus, to the extent any 15 U.S.C. § 1703(a)(2)(A)-(C) claims are premised on the broker cooperation policy, they are hereby dismissed with prejudice.

#### iii. The Scheme to Pull Out Profits Leaving Unit Purchasers Holding the Bag

 While Sapphire, GP, and Regions do not specifically address the scheme to pull out profits leaving unit purchasers holding the bag, Plaintiff has not alleged any misrepresentation and thus has not sufficiently alleged fraud. Based on her Response, Plaintiff seems to be alleging that Sapphire and GP borrowed an improperly large amount of funds secured by a mortgage on the Sapphire Condominium and spent more than was reasonably necessary for the construction of it so that the general contractor received unreasonably high profits. Plaintiff however concedes

Section 5 of the Contract expressly allows the borrowing of funds secured by a mortgage on the Sapphire Condominium with no upper limit on the amount specified. Therefore there are no misrepresentations alleged. Thus, to the extent any 15 U.S.C. § 1703(a)(2)(A)-(C) claims are premised on the "scheme to pull out profits leaving unit purchasers holding the bag," they are hereby dismissed with prejudice.

#### b. Reasonable Reliance

Sapphire, GP, Regions argue that Plaintiff has failed to plead reasonable reliance, an essential element of fraud, in its claims pursuant to 15 U.S.C. § 1703(a)(2)(A)-(C), and the failure to plead it necessitates dismissal. *AutoNation, Inc. v. GAINSystems, Inc.*, 2009 WL 1941279 at *9 (S.D.Fla.2009). Specifically, Defendants argue that Plaintiff has not plead reasonable reliance as to the misrepresentation as to the identity of the developer and the broker cooperation scheme. The Court will analyze Defendants' arguments in turn.

#### i. Misrepresentation as to the Identity of the Developer

 Sapphire argues that because the sales contract correctly identifies the developer, Plaintiff as a matter of law cannot allege reasonable reliance on misrepresentations which occurred prior to the execution of the sales contract. "Reliance on fraudulent representation is unreasonable as a matter of law where the alleged misrepresentations contradict the express terms of the ensuing written agreement." *Garcia v. Santa Maria Resort, Inc.*, 528 F.Supp.2d 1283, 1295 (S.D.Fla.2007). *See Weaver v. Opera Tower, LLC*, 2008 WL 4145520 at *4–5 (S.D.Fla.2008) (dismissing fraud claim in the condominium deposit case because pre-agreement misrepresentation was contradicted by contract lan-

guage). The sales contract expressly identifies the developer as Sapphire. This plainly contradicts Plaintiff's alleged belief that some other entity was the developer. Thus Plaintiff cannot, as a matter of law, have reasonably relied upon any purported misrepresentation to the contrary. *Garcia*, 528 F.Supp.2d at 1295.

Plaintiff counters that her reliance on the misrepresentations was reasonable by trying to distinguish the two cases cited by Defendants and by urging the Court to follow another case.[3] Plaintiff argues that the Court should not follow the rule set out in *Garcia* and *Weaver* because the language of the sales contracts in those cases specifically precluded reliance on anything other than the sales contract and condominium documents. Plaintiff however does not explain how nor why this contract language affects the rule set out in the *Garcia* and *Weaver* courts. The Court does not find Plaintiff's distinction persuasive. Instead, Plaintiff urges the Court to follow the reasoning of *Gentry v. Harborage Cottages–Stuart, LLLP*, 602 F.Supp.2d 1239 (S.D.Fla.2009). The *Gentry* court cites to *Garcia* for the rule that as a matter of law, reliance on fraudulent misrepresentation is unreasonable where the misrepresentations contradict the express terms of written agreement. *Id.* at 1258. However, the court found that certain written materials could be reasonably relied upon because the agreements at issue only precluded reliance upon oral misrepresentations and because there also were not "any terms in the Purchase Agreements contradicting the alleged misrepresentations." *Id.* In the instant case, unlike in *Gentry*, the sales contract contradicts the alleged misrepresentations. Thus *Gentry* actually supports Sapphire's argument that Plaintiff's reliance fails as a

matter of law. Thus, to the extent any 15 U.S.C. § 1703(a)(2)(A)-(C) claims are premised on misrepresentation as to the identity of the developer, they are hereby dismissed with prejudice. The Court is also dismissing these claims for lack of material misrepresentation or omission in Section II(D)(2)(a)(i) of this Order.

*ii. The Broker Cooperation Scheme*

As discussed above, Plaintiff seems to be alleging that the broker cooperation scheme caused her broker to abandon his obligations to her by not informing Plaintiff that she had certain rights under the contract. Plaintiff alleges that the scheme harmed her because she did not read the contract. (Amended Complaint, ¶ 96). Defendants argue that this claim fails because Plaintiff's own failure to read the contract cannot give rise to a viable cause of action. *See Garcia* at 1296 ("A party who signs an instrument is presumed to know its contents ... He cannot avoid his obligations thereunder by alleging that he did not read the contract, or that the terms were not explained to him, or that he did not understand the provisions.") (citations and quotations omitted). Thus, to the extent any 15 U.S.C. § 1703(a)(2)(A) and (C) claims are premised on the broker cooperation policy, they are hereby dismissed with prejudice. The Court is also dismissing these claims for lack of material misrepresentation or omission in Section II(D)(2)(a)(ii) of this Order.

**c. Pleading Standards—Fraud**

Although the Court is dismissing the claims based on 15 U.S.C. § 1703(a)(2)(A)-(C) on other grounds, for the sake of thoroughness, it will analyze whether Plaintiff's allegations are suffi-

---

3. In trying to distinguish the two cases cited by Sapphire from the instant case, Plaintiff notes that Sapphire only cites to two cases decided under the ILSFDA. Ironically, Plaintiff only cites to one case.

ciently specific to meet the Rule 9(b) requirements. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." Fed.R.Civ.P. 9(b). The Eleventh Circuit has noted that because "fair notice is '[p]erhaps the most basic consideration' underlying Rule 9(b), the plaintiff who pleads fraud must 'reasonably notify the defendants of their purported role in the scheme.'" *Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1381 (11th Cir.1997) (quoting *Midwest Grinding Co. v. Spitz,* 976 F.2d 1016, 1020 (7th Cir.1992)). Therefore, a Plaintiff must plead fraud with sufficient details. However, Rule 9(b) must be read in conjunction with Rule 8(a) so as to not "abrogate the concept of the notice pleading." *Durham v. Bus. Mgmt. Assocs.,* 847 F.2d 1505, 1511 (11th Cir. 1988).

The Eleventh Circuit stated in *Ziemba v. Cascade International, Inc.* that: "Rule 9(b) is satisfied if the Complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir.2001).

 The Court agrees with Plaintiff that the Amended Complaint contains the requisite level of particularity to satisfy Rule 9(b) as to the misrepresentation as to the identity of the developer. Plaintiff's allegations as to the "scheme to pull out profits leaving unit purchasers holding the bag" clearly lack the required particularity because, among other things, they omit any mention of the manner in which the statement misled Plaintiff. Plaintiff's allegations as to the broker cooperation scheme clearly lack the required particularity because, among other things, they omit any mention of precisely what statement was made.

### E. Plaintiff's State Claims Sounding in Fraud

As discussed above, the Court finds that Plaintiff has failed to state a claim sounding in fraud as to Defendants Sapphire, GP, and Regions. Thus Plaintiff's state law claims sounding in fraud pertaining to those Defendants, Counts V, XI, XVIII, and XIX, are dismissed with prejudice for the same reasons stated above. The Court turns its attention to whether the state claims sounding in fraud against Defendant Premier must be dismissed.

Plaintiff, in her Response, argues that Premier made the same misrepresentations or omissions as to the identity of the developer and the broker cooperation scheme that Defendants Sapphire, GP and Regions made. The Court discusses these arguments in great detail above. For the same reasons the Court is dismissing the other claims sounding in fraud, we are dismissing all state claims sounding in fraud as to Premier, Counts XX and XXI, with prejudice. Because all of the claims against Premier are being dismissed with prejudice, Premier will be dismissed from the above styled action.

### F. Plaintiff's Claim of a Violation of Florida Condominium Act Relating to Escrow

 Defendant Sapphire does not move to dismiss Count IV of Plaintiff's Amended Complaint for any reason other than subject matter jurisdiction. As discussed above, due to her shotgun pleading, Plaintiff has not sufficiently plead a violation of Florida Statutes § 718.202 in the

Amended Complaint. However, the Court finds that Plaintiff could plead facts sufficient to sustain a cause of action based on this violation. Accordingly, claims premised on Florida Statutes § 718.202 are hereby dismissed, with leave to amend.

### G. Plaintiff's Claim of a Violation of FDUTPA

Sapphire and GP move to dismiss Count VI, Plaintiff's claim of a violation of the Florida Deceptive and Unfair Trade Practices Act, Section 502.201 et seq., Florida Statutes, arguing that it fails to state a claim. Plaintiff seemingly claims that Developer *ipso facto* violated FDUTPA by violating the ILSFDA and Fla. Stat. § 718.506, as alleged in Counts I through V. Sapphire and GP argue that whether Count VI is a viable claim depends on whether the Court views Counts I through V as viable. The Court agrees. Because the Court is not dismissing all of Counts I through V with prejudice, the Court finds that Plaintiff can state a claim for a violation of FDUTPA. Thus the Court will allow Plaintiff another chance to properly plead this claim.

### H. Plaintiff's Breach of Contract Claims

Defendants move to dismiss Plaintiff's breach of contract claims, Counts VII and IX, for failure to state a claim. Plaintiff, in her Response, argues that Sapphire and GP: (1) breached the Contract by failing to return the excess deposit, (2) breached the implied covenant associated with Section 5 of the Contract, and (3) breached the implied covenant associated with express covenants pertaining to a viable condominium association.

*i. Sapphire and GP Breached the Contract by Failing to Return the Excess Deposit*

■■■ Plaintiff argues that regardless of who breached the Contract first, Sapphire and GP breached it by not returning Plaintiff's excess deposit as required by Section 13 of the Contract. Sapphire and GP move to dismiss Counts VII and IX to the extent they rely on these allegations arguing the Contract does not require Sapphire to refund any portion of her deposit in the absence of a default notice and a 20 day cure period.

■■■ Repudiation of a contractual duty ripens into a breach prior to the time for performance only if the promisee elects to treat it as such. *Franconia Associates v. U.S.*, 536 U.S. 129, 143, 122 S.Ct. 1993, 153 L.Ed.2d 132 (2002). "[W]here one party, even before the time for performance of the contract has arrived, renounces it to the other party, the latter may act on the renunciation, treat the contract as broken, and sue before the time for performance." *Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A.*, 938 So.2d 571, 575 (Fla. 4th DCA 2006) (quoting *Sullivan v. McMillan*, 26 Fla. 543, 8 So. 450, 457 (1890)). The parties concede that Sapphire has not required Plaintiff to close and has not declared her in default. The Court finds that Sapphire is not required to treat Plaintiff's repudiation as a breach *until the time of performance*. Section 10 of the Contract, titled "Closing," describes the closing as the time when Sapphire delivers the deed to Plaintiff and Plaintiff pays the balance of the purchase price. This Section is describing the performance of the Contract. Section 9 of the Contract states that Sapphire must schedule the closing no later than one year following the Outside Date. Section 7 of the Contract defines the Outside Date as January 31, 2010. Accordingly, the latest the time of performance can occur is January 31, 2011. At that time, if it has not already, Sapphire will have to recognize Plaintiff's default. Because Sapphire has not yet declared Plaintiff in default and is not required to

do so until January 31, 2011, Plaintiff's claim that Sapphire and GP breached the Contract by failing to return the excess deposit is not yet ripe. Therefore the Court will dismiss Count VII without prejudice.[4]

*ii. The Developer Breached the Implied Covenant Associated with: (1) Section 5 of the Sales Contract and (2) Express Covenants Pertaining to a Viable Condominium Association*

Plaintiff, in her Response, argues that Sapphire and GP breached the implied covenant of good faith associated with Section 5 of the Contract[5] by borrowing too much money from the construction lender which impedes Sapphire and GP from releasing the unit from the mortgage at closing. Plaintiff also argues that Sapphire and GP breached the implied covenant of good faith associated with the express covenants to provide a viable condominium association by virtue of its alleged insolvency. Sapphire and GP move to dismiss these claims arguing that: (1) Plaintiff has not alleged any damages as a result of the alleged breach and cannot allege damages because she refused to close; (2) the implied covenants do not exist; (3) Plaintiff has failed to allege that Sapphire has clearly and unequivocally refused to perform; and (4) Plaintiff has admitted she was not ready, willing, and able to close at the time of the alleged breach. The Court will first analyze whether Plaintiff has alleged any damages as it is a fundamental element to a breach of contract action.

Sapphire and GP argue that even if they breached one of the alleged implied covenants, Plaintiff has not alleged damages as a result of the breach, a fundamental element. Sapphire and GP further argue that Plaintiff cannot allege damages because she refused to close. (Amended Complaint, ¶ 204). Under Florida law, the elements of a breach of contract action are: "1) a valid contract; 2) a material breach; and 3) damages." *Abbott Lab., Inc. v. Gen. Elec. Capital,* 765 So.2d 737, 740 (Fla. 5th DCA 2000). Thus, the failure to allege damages would be fatal to Plaintiff's breach of contract claims premised on Sapphire and GP breaching the alleged implied covenants. Defendants assert that because Plaintiff refused to close, she could not have received encumbered or unmarketable title, nor could she be stuck with an insolvent condominium association, thus she has not suffered any damages. *See, e.g., MasTec, Inc. v. TJS, LLC,* 979 So.2d 285, 291–292 (Fla. 2d DCA 2008) (in the absence of the buyers' tender of the purchase price at closing, the seller never became obligated to convey title—marketable or otherwise). The Court agrees. Thus, to the extent any of Plaintiff's breach of contract claims are premised on Sapphire and GP breaching the implied covenant associated with: (1) Section 5 of the Contract and (2) express covenants pertaining to a viable condominium association, they are hereby dismissed with prejudice.

Because the Court finds that Plaintiff cannot satisfy a fundamental element of a breach of contract claim as to the implied covenants associated with Section 5 of the Contract and with express covenants pertaining to a viable condominium association, the Court does not need to discuss

---

4. The Court finds that Count IX does not apply to Plaintiff's claim that Sapphire and GP breached the Contract by failing to return the excess deposit. To the extent Count IX applies to this claim, it is dismissed without prejudice.

5. As discussed above, Section 5 of the Contract expressly allows the borrowing of funds secured by a mortgage on the Sapphire Condominium with no upper limit on the amount specified.

Sapphire and GP's other arguments as to why Count IX should be dismissed.

## I. Plaintiff's Claim for Specific Performance

■■■ Defendants Sapphire and GP move to dismiss Plaintiff's claim for specific performance, Count VIII, because the Contract explicitly prohibits Plaintiff from seeking specific performance and the Contract does not require Sapphire to refund any portion of her deposit, the exact action sought by Plaintiff in her claim for specific performance.

Section 13 of the Contract provides that the "Buyer may not seek specific performance of Seller's obligations." Defendants Sapphire and GP argue that because the Contract expressly precludes Plaintiff from seeking specific performance, the Court must dismiss Count VIII as a matter of law. In her Response, Plaintiff counters that it does not make sense that the contract entitles the buyer to the return of her excess deposit on one hand but cannot require Sapphire to return the excess deposit on the other hand.

■■■ Specific performance is an extraordinary remedy. Florida case law is clear that specific performance is not a matter of right. *Rybovich Boat Works, Inc. v. Atkins* 585 So.2d 270, 272 (Fla.1991) (citing *Todd v. Hyzer*, 154 Fla. 702, 18 So.2d 888 (1944)). "[S]pecific performance of a contract for sale of land will be decreed only if ... there is no adequate remedy at law available to him." *Hembree v. Bradley*, 528 So.2d 116, 117–18 (Fla. 1st DCA 1988) (citing *Shirley v. Lake Butler Corporation*, 123 So.2d 267, 270 (Fla. 2d DCA 1960)). Accordingly, if the buyer does in fact have an adequate remedy at law under the contract, then specific performance should not be available. The buyer has an adequate remedy at law: damages under a breach of contract claim. This is not a situation which money damages would be inadequate nor is this is a situation which it would be difficult to determine the monetary amount of the damages. In addition, the Contract explicitly prohibits Plaintiff from seeking specific performance. For the aforementioned reasons, the Court finds that Plaintiff is not entitled to specific performance, thus Count VIII must be dismissed with prejudice.

## J. Plaintiff's Claim for Accounting

Defendant Sapphire does not move to dismiss Count X of Plaintiff's Amended Complaint for any reason other than subject matter jurisdiction. However, Plaintiff does not plead why she is entitled to an accounting. Accordingly, Plaintiff's claim for an accounting is hereby dismissed, with leave to amend.

## K. Plaintiff's Claim for Unjust Enrichment

■■■ Sapphire and GP move to dismiss Plaintiff's claim for unjust enrichment arguing that a claim for unjust enrichment cannot stand if an express contract exists, as is the case here. To state a claim for unjust enrichment, a plaintiff must plead the following elements: 1) the plaintiff has conferred a benefit on the defendant; 2) the defendant has knowledge of the benefit; 3) the defendant has accepted or retained the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it. *Della Ratta v. Della Ratta*, 927 So.2d 1055, 1059 (Fla. 4th DCA 2006); *see also Hillman Constr. Corp. v. Wainer*, 636 So.2d 576, 577 (Fla. 4th DCA 1994). Courts have held that under Florida law, a claim for unjust enrichment, a form of equitable relief, cannot stand if an express contract exists. *Tracfone Wireless, Inc. v. Access Telecom, Inc.*, 642 F.Supp.2d 1354, 1366

(S.D.Fla.2009); *see also Morris v. ADT Sec. Services,* 580 F.Supp.2d 1305, 1312–13 (S.D.Fla.2008) (claim for unjust enrichment may proceed where plaintiff has not asserted a claim based on an express contract); *Goldberg v. Chong,* 2007 WL 2028792, *9 (S.D.Fla. Jul. 11, 2007) (same). Florida appellate decisions have reinforced the position that quantum meruit damages cannot be awarded when an enforceable contract exists. *See Corn v. Greco,* 694 So.2d 833, 834 (Fla. 2d DCA 1997); *Cross v. Strader Construction Corp.,* 768 So.2d 465, 466 (Fla. 2d DCA 2000). Plaintiff is seeking the deposits made pursuant to an express contract with Sapphire. As there is no dispute to whether there is an express contract in the instant case, the Court finds that the claim for unjust enrichment cannot stand. Thus the Court is dismissing Count XII with prejudice.

### L. Plaintiff's Claims for Equitable Lien

 Defendants Sapphire, GP, and Regions move to dismiss Counts XIII through XV, Plaintiff's claims for equitable lien, arguing that Plaintiff is not entitled to an equitable lien. Under Florida law, equitable liens may be founded upon two bases; (i) a written contract that indicates an intention to charge a particular property with a debt or obligation; or, (ii) a declaration by a court out of general considerations of right or justice as applied to the particular circumstances of a case. *Williams v. Aloisi,* 271 B.R. 676, 683 (M.D.Fla.2002) (citing *In re Tsiolas,* 236 B.R. 85, 88 (Bankr.M.D.Fla.1999)).

Here, there is no evidence of an intent to create a lien on the property. Rather, Section 5 of Contract expressly provides "[n]either this Agreement, nor Buyer's payment of deposits, will give Buyer any lien or claim against the Unit, the Condominium or the real property upon which the Condominium is being developed." Accordingly, there cannot be an equitable

lien arising out of the contract and the Court finds no basis for a lien based in equity. Therefore, Counts XIII through XV of the Amended Complaint are being dismissed with prejudice.

### M. Plaintiff's Claim for Tortious Interference

Regions moves to dismiss Plaintiff's claim for tortious interference arguing that Regions did not procure a breach of contract. As it is possible that Plaintiff could properly plead a breach of contract claim, the Court finds that it would be premature to dismiss with prejudice Plaintiff's count for tortious interference. Because of Plaintiff's shotgun pleading, Count XVII is dismissed, with leave to amend.

### N. Whether Plaintiff States a Claim Against Altman Sapphire GP, LLC for Counts I through V and Counts VII through XV.

 GP moves to dismiss Counts I through V as to it, arguing that the Amended Complaint fails to allege that GP is a "developer" or "agent" of a developer under either ILSFDA or the Florida Condominium Act. GP moves to dismiss Counts VII through XV because GP was not a party to the Contract.

None of the parties dispute that Sapphire is a developer of the project. At issue is whether GP is also a developer or an agent of Sapphire. It is unclear in the Amended Complaint whether Plaintiff is alleging GP to be a developer or agent.

The ILSFDA defines "developer" as "any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision." 15 U.S.C. § 1701(5). The Florida Condominium Act defines a "developer" as

"a person who creates a condominium or offers condominium parcels for sale or

lease in the ordinary course of business, but does not include an owner or lessee of a condominium or cooperative unit who has acquired the unit for his or her own occupancy, nor does it include a cooperative association which creates a condominium by conversion of an existing residential cooperative after control of the association has been transferred to the unit owners if, following the conversion, the unit owners will be the same persons who were unit owners of the cooperative and no units are offered for sale or lease to the public as part of the plan of conversion. A state, county, or municipal entity is not a developer for any purposes under this act when it is acting as a lessor and not otherwise named as a developer in the association."

Fla. Stat. § 718.103(16).

GP argues that its alleged status as a general partner of Sapphire does not make it a developer or agent under the ILSFDA or the Florida Condominium Act. GP argues that in this jurisdiction the term "developer" does not apply to a developer's principal owners, officers, directors, shareholders, partners, members, or managers if they are not directly engaged in the sale of units within the development. To support its argument, GP cites to *Paquin v. Four Seasons of Tennessee, Inc.*, 519 F.2d 1105, 1111 (5th Cir.1975), wherein the United States Court of Appeals for Fifth Circuit affirmed a bench trial decision in favor of a sales representative who did not have authority to set a final price. However, the civil liability section of the ILSFDA (§ 1709) was amended in 1979 to broaden the scope of coverage for agents who offer to sell lots.

Plaintiff counters that she seeks to hold GP liable not because it is the general partner of Sapphire, but instead because GP had a direct involvement in every transaction forming the basis of every single one of Plaintiff's claims. In support of her argument, Plaintiff points to the fact that GP executed the Escrow Agreement, which is expressly incorporated into the Contract, on behalf of Sapphire. In addition, Plaintiff points out that GP executed on behalf of Sapphire, the Notice of Commencement, the Construction Mortgage and four subsequent modifications to the Construction mortgage as evidence that GP had a direct involvement in the mortgage transaction.

■ The existence of an agency relationship is generally a question of fact under Florida law; however, when the moving party fails to produce any supportive evidence or when the evidence presented is so unequivocal that reasonable persons could reach but one conclusion, that question of fact becomes a question of law to be determined by the court. *Rubin v. Gabay*, 979 So.2d 988, 990 (Fla. 4th DCA 2008). The Court finds Plaintiff has provided some evidence that GP could be an agent of Sapphire. The Court notes that Fla. Stat. § 620.1402(1) states "[e]ach general partner is an agent of the limited partnership for the purposes of its activities." Thus the Court finds that whether GP is an agent of Sapphire is a question of fact that cannot be determined at this time.

## O. Supplemental Jurisdiction

■ Defendants ask this Court to decline supplemental jurisdiction, arguing the state law claims substantially predominate over the claims over which the district court has original jurisdiction. When this Court previously agreed to assert supplemental jurisdiction in its June 30, 2009 Order there were more federal counts than state counts. Of the twenty-one remaining counts in Plaintiff's Amended Complaint, only four (Counts I, II, III, and XVI) raise issues of federal law. Thus the state law

issues substantially outnumber over what remains of Counts I, II, III, and XVI for which the Court has original jurisdiction. The Court still finds that the state law claims against Defendants are so related to the federal claims in the instant action that they form part of the same case or controversy. 28 U.S.C. § 1367(a). Therefore, this Court has the authority to exercise supplemental jurisdiction over the state law claims in the instant action.

 "When the district court has dismissed all federal claims from a case, there is a strong argument for declining to exercise supplemental jurisdiction over the remaining state law claims." *Arnold v. Tuskegee Univ.*, 212 Fed.Appx. 803, 811 (11th Cir.2006). This is especially true when the federal claims are dismissed before trial, because considerations of "judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 349 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). However the dismissal of Plaintiffs federal claims do not deprive the Court of supplemental jurisdiction over the remaining state law claims. *See Palmer v. Hospital Authority of Randolph County*, 22 F.3d 1559, 1568 (11th Cir.1994). Indeed, under 28 U.S.C. § 1367(c), the Court has the discretion to decline to exercise supplemental jurisdiction over non-diverse state law claims, where the Court has dismissed all claims over which it had original jurisdiction, but is not required to dismiss the case. *See Palmer*, 22 F.3d at 1567–68.

In the instant case, the Court is not dismissing all federal claims with prejudice

from the case. Rather than having the parties litigate the issues in two courts, the Court will continue to exercise supplemental jurisdiction over Plaintiff's state law claims.

### III. *CONCLUSION*

Accordingly, for the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants Sapphire–Fort Lauderdale, LLLP, Altaian Sapphire GP, LLC, Regions Financial Corporation, and The Premier Sales Group, Inc.'s Motions to Dismiss [DE–67, 68, 77, 69 respectively] are **GRANTED.**

2. Count I, Count II, Count III and Count XVI are **DISMISSED with prejudice** pursuant to violations of 15 U.S.C. § 1703(a)(2)(A)-(C).

3. Count I, Count II, Count III, and Count XVI are **DISMISSED without prejudice** pursuant to violations of 15 U.S.C. § 1703(a)(1)(B)-(D) for failure to be pled with particularity with leave to amend. In amending the Amended Complaint, Plaintiff is to clearly state separate counts for each such violation [6]. These claims may be amended in accordance with this Order.

4. In terms of any ILSFDA claims premised on the developer's use of deposits in excess of 10%, these claims are **DISMISSED without prejudice** to being replead as a breach of contract claim and/or a claim under Fla. Stat. § 718.202.

5. Counts IV, VI, X, XVII are **DISMISSED without prejudice** for failure to be pled with particularity with leave

---

6. For example, in the current Amended Complaint, Plaintiff puts forth a series of facts and makes statements as to how this violates her rights. Then in Counts I, II, III, and XVI, there is a listing of multiple violations of the ILSFDA within each, without a clear statement of what each count alleges or is seeking under each provision. These should be broken into separate counts. The Court already addressed the same problem that was present in the original Complaint, in its June 30, 2009 Order. Plaintiff ignored this Court's Order.

to amend. These claims may be amended in accordance with this Order.

6. Count VII is **DISMISSED without prejudice** for not being ripe for review.

7. Counts V, VIII, IX, XI, XII, XIII, XIV, XV, XVIII, XIX, XX, and XXI are **DISMISSED with prejudice.**

8. Defendant The Premier Sales Group, Inc. is **DISMISSED with prejudice** from the above styled action.

9. A Second Amended Complaint shall be filed on or before February 16, 2010.

10. Defendant Lichtenfeld's Motion to Dismiss [DE–76] is **DENIED as moot.**

11. Plaintiff's Motion for Judicial Notice [DE–89] is **DENIED as moot.**

12. Plaintiff's Motion for Partial Summary Judgment [DE–84] is **DENIED as moot.**

13. Plaintiff's Amended Motion for Partial Summary Judgment [DE–105] is **DENIED as moot.**

14. Plaintiff's Motion for Oral Argument [DE–106] is **DENIED as moot.**

## *ORDER DENYING RENEWED MOTION FOR RECONSIDERATION; DENYING LEAVE TO AMEND*

THIS CAUSE is before the Court upon Plaintiff's (i) Renewed Motion Based on New Evidence for Reconsideration of the Court's February 1, 2010 Order Partially Granting Defendants' Motions to Dismiss; (ii) Motion Based on Good Cause to Add Parties with (iii) Incorporated Memorandum of Law [DE–159], filed herein on March 13, 2010. The Court has carefully considered the Motion, Defendants' Response [DE–169], Plaintiff's Reply [DE–170], the arguments presented at the hearing before the undersigned on April 16, 2010, and is otherwise fully advised in the premises.

### I. *BACKGROUND*

Plaintiff filed the instant action on January 16, 2009, against various Defendants,

arising out of a preconstruction sales contract to purchase a condominium unit in the Fort Lauderdale Beach area on January 21, 2006. On June 30, 2009 [DE–32] and August 17, 2009 [DE–53], the Court granted in part Defendants' motions to dismiss the Complaint. Thereafter, Plaintiff filed her Amended Complaint on September 12, 2009 [DE–58]. The Court subsequently dismissed Plaintiff's Amended Complaint in its entirety on February 1, 2010, for shotgun pleading, and further dismissed with prejudice Counts I, II, III and XVI pursuant to violations of 15 U.S.C. § 1703(a)(2)(A)-(C) and Counts V, VIII, IX, XI, XII, XIII, XIV, XV, XVIII, XIX, XX, and XXI, as well as dismissed with prejudice Defendant, The Premier Sales Group, Inc. from this action. [DE–125]. On February 17, 2010, Plaintiff filed her Amended Motion for Reconsideration of the Court's February 1, 2010 Order [DE–139], which the Court denied on March 4, 2010 [DE–156]. Plaintiff then filed her Second Amended Complaint on March 2, 2010 [DE–149], however, the Court *sua sponte* struck the Second Amended Complaint as an improper shotgun pleading in violation of the Court's repeated orders [DE–152]. Plaintiff proceeded to file her Third Amended Complaint on March 12, 2010 [DE–158].

Immediately after filing her Third Amended Complaint, on March 13, 2010, Plaintiff filed the instant Motion, Plaintiff's: (i) Renewed Motion Based on New Evidence for Reconsideration of the Court's February 1, 2010 Order Partially Granting Defendants' Motions to Dismiss; (ii) Motion Based on Good Cause to Add Parties with (iii) Incorporated Memorandum of Law [DE–159]. In the Motion, Plaintiff seeks to add three new Defendants in her Fourth Amended Complaint (the "Proposed Defendants"): Altman Development Corporation; The Altman Companies (alleged to be the managing mem-

ber of Altman Sapphire GP, LLC); and Joel L. Altman (alleged to be the principal shareholder, officer and control person of The Altman Companies, Altman Development Corporation, and Altman Contractors, Inc.). Plaintiff also seeks to replead a claim under 1703(a)(2)(A) & (C) in Count X against all Defendants despite that the Court dismissed with prejudice Plaintiff's claims under 1703(a)(2)(A)-(C). The deadline for the parties to amend the pleadings and add parties based upon the Court's Amended Scheduling Order [DE–155] was February 1, 2010. The previous deadline to amend pleadings and add parties contained in the original Scheduling Order [DE–29] was October 29, 2009, and was modified at Defendants' request. Plaintiff did not file a motion to extend the deadline to amend her pleadings or add parties. Plaintiff presently has had four opportunities to plead her claims and the Court dismissed with prejudice the claim that Plaintiff now seeks to replead in Count X of the proposed Fourth Amended Complaint.

## II. *DISCUSSION*

### A. Legal Standard

■ "[R]econsideration of a previous order is an extraordinary remedy to be employed sparingly." *Burger King Corp. v. Ashland Equities, Inc.,* 181 F.Supp.2d 1366, 1370 (S.D.Fla.2002) (citing *Mannings v. School Board of Hillsborough County,* 149 F.R.D. 235, 235 (M.D.Fla.1993)). "The 'purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence.'" *Burger King Corp.,* 181 F.Supp.2d at 1369 (quoting *Z.K. Marine Inc. v. M/V Archigetis,* 808 F.Supp. 1561, 1563 (S.D.Fla. 1992)). Three major grounds justify reconsideration: "(1) an intervening change in the controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injus-

tice." *Id.* (citing *Offices Togolais Des Phosphates v. Mulberry Phosphates, Inc.,* 62 F.Supp.2d 1316, 1331 (M.D.Fla.1999); *Sussman v. Salem Saxon & Nielsen, P.A.,* 153 F.R.D. 689, 694 (M.D.Fla.1994)). For a court to reconsider its prior judgment the moving party must present facts or law of a "strongly convincing nature" that would induce a court to reverse its prior decision. *Id.* (citing *Sussman,* 153 F.R.D. at 694). Further, Federal Rule of Civil Procedure 15 provides that leave to amend "should be freely given when justice so requires," however, a court may properly deny leave to amend where amendment would be futile. *Hall v. United Ins. Co. of Am.,* 367 F.3d 1255, 1262–63 (11th Cir. 2004).

### B. Motion for Renewed Reconsideration

Plaintiff argues that she has discovered new evidence which purportedly establishes that Defendants Sapphire Fort Lauderdale, LLLP, Altman Sapphire GP, LLC and the Proposed Defendants submitted a false application in violation of federal statutes to the Federal National Mortgage Association ("FNMA" or "Fannie Mae") for final project approval of the Sapphire condominium development, constituting a device, scheme, or artifice to defraud in violation of the 15 U.S.C. § 1703(a)(2)(A) & (C). As such, Plaintiff requests that the Court reconsider its February 1, 2010 Order Granting Motions to Dismiss [DE–125] to the extent that it dismissed with prejudice her claims under section 1703(a)(2). Further, Plaintiff requests leave to add the Proposed Defendants as parties. Plaintiff argues that evidence of the new scheme could not have been discovered any sooner. Plaintiff contends she had been attempting to obtain documents from the FNMA since last October and only recently obtained a sworn statement from the FNMA on February 1,

2010. Plaintiff argues that she then conducted an extensive background investigation to ensure the allegations in Count X of the Fourth Amended Complaint were accurate and completed her last witness interview as recently as March 10, 2010.

At the outset, Defendants point out that Plaintiff is asking the Court to reconsider its Order Granting Motions to Dismiss [DE–125] for a third time. [DE–133, 139, 159]. Regardless, Defendants argue that the proposed amendment is futile and, therefore, the Court should deny the Motion. Defendants note that motions for reconsideration are extraordinary remedies to be employed sparingly and that while Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be freely given, a court may properly deny leave to amend where as here amendment would be futile. *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir.2004).

First, Defendants argue that the Motion should be denied because the Fourth Amended Complaint (as well as the Third Amended Complaint) is yet another improper shotgun pleading. The Fourth Amended Complaint incorporates all prior allegations and Plaintiff removed the "Wherefore" clause from each count and instead inserted a single, un-numbered, all-encompassing "Prayer for Relief" at the end of the pleading such that Defendants are unable to discern which purported facts pertain to which purported claims or which claims relate to which purported prayers for relief. Thus, Defendants argue that amendment would be futile as this is another improper shotgun pleading.

Second, Defendants argue that amendment would be futile since Count X fails to allege the essential elements for a claim sounding in fraud: (1) a material misrepresentation or omission, (2) reasonable reliance thereon, and (3) damages. *AutoNation, Inc. v. GAINSystems, Inc.*, Case No.

08–61632–CIV, 2009 WL 1941279, at *9 (S.D.Fla. July 7, 2009). Defendants argue that in Count X Plaintiff fails to allege that Defendants made any misrepresentation or omission of material fact to Plaintiff. Plaintiff alleges in Count X that Defendants and the Proposed Defendants made false statements to Fannie Mae in order to obtain the agency's approval. However, Plaintiff has not alleged any false statements or representations to her that the project had obtained or would obtain Fannie Mae approval. As such, Defendants argue that Plaintiff has failed to allege the most fundamental element—a misrepresentation. Defendants also argue that Plaintiff fails to allege the second element, as Plaintiff fails to allege that she relied upon any misrepresentation or omission made by any party concerning Fannie Mae approval in entering into the sales contract.

Moreover, Defendants argue that Plaintiff could not have reasonably relied upon any alleged misrepresentations as to Fannie Mae approval (assuming she alleged any were made to her) since such allegations are contradicted by the plain language of the sales contract. *Garcia v. Santa Maria Resort, Inc.*, 528 F.Supp.2d 1283, 1295 (S.D.Fla.2007) ("[R]eliance on fraudulent representations is unreasonable as a matter of law where the alleged misrepresentations contradict the express terms of the ensuing written agreement."). The sales contract provided in various provisions that Plaintiff could not rely upon representations not expressed in the sales contract or purported representations as to the potential appreciation or resale value of the unit. [DE–4–1]. Based upon the fact that the sales contract makes no mention of Fannie Mae approval and expressly precludes reliance on representations as to the property's value or depreciation or representations outside of the contract, Defendants argue that Plaintiff cannot rely

on her erroneous belief that the sale price of the unit implicitly accounts for Fannie Mae approval; to the contrary, the contract provides that it does not. Thus, any purported misrepresentation is contradicted by the plain language of the sales contract and Plaintiff could not have relied as a matter of law.

Finally, Defendants argue that Count X fails as Plaintiff has not suffered any damages. Even if all the other elements were satisfied, Plaintiff has not and cannot allege that Fannie Mae approval was revoked and, therefore, her damages are entirely theoretical. Regardless, even if at some time in the future Fannie Mae revoked its approval, Plaintiff would not be affected as she refused to close on her unit long before she even discovered the alleged misrepresentation. As such, Plaintiff has not and will not suffer any damages as a result of the purported scheme to defraud Fannie Mae. Therefore, Defendants argue that amendment is futile and Plaintiff's Motion should be denied.

 In reply, Plaintiff argues that she has met the pleading requirements of Rule 8 and that her pleading is not shotgun as she includes twenty-seven (27) paragraphs for the new Count X and incorporates specific paragraphs in support. In contrast to prior pleadings, Plaintiff argues that the Fourth Amended Complaint sets forth each violation in a separate count with the facts for each violation and has specific references to the preceding paragraphs that support each count. Plaintiff argues that none of the counts incorporate the paragraphs of a preceding count and that the table of contents provides a roadmap to the claims. Further, in regard to the argument that Plaintiff has not properly alleged Count X, Plaintiff argues that 15 U.S.C. § 1703(a)(2)(A) & (C) prohibits "with respect to the sale or offer to sell any lot," the use of "any device, scheme, or artifice to defraud" that "operates or would operate as a fraud or deceit on the purchaser." Plaintiff argues that the ILSDA is modeled after the Securities Act, and that courts in interpreting the ILSDA's provisions look to cases under the Securities Act.[1] As such, Plaintiff appears to be arguing that the standard in regard to Count X is simply whether the misstatements are deceptive within the meaning of

---

1. While Plaintiff argues that the Securities Act and cases thereunder are readily applicable to ILSDA claims, the Court is not persuaded. Plaintiff relies upon *Hall v. Bryce's Mountain Resort, Inc.*, 379 F.Supp. 165, 168–69 (W.D.Va.1974), yet the *Hall* court indicated that "[a]lthough the Securities Act of 1933 was obviously the source of the Land Sales Full Disclosure Act ... the court perceives the Land Sales Full Disclosure Act as being sufficiently unambiguous that reference to the Securities Act of 1933 is hardly required," noting that the Act is a "comprehensive, self-contained statute." Similarly here, the Court is persuaded that the ILSDA is sufficiently unambiguous and comprehensive on its face such that resort to the Securities Act and cases thereunder is unnecessary. Moreover, courts in this district have expressly concluded that the Securities Act is not applicable to claims like Plaintiff's that are premised upon real estate contracts for personal use. *See* *Garcia*, 528 F.Supp.2d at 1292 (expressly holding that the federal securities laws were inapplicable to the plaintiffs' purchase contracts related to the sale of condominiums that were for personal use, finding that the purchase contracts were not "investment contracts" and that the "federal securities laws were not intended to provide a federal remedy for all fraud or misconduct arising out of a commercial transaction.") (internal citations omitted). While the ILSDA may have been based upon the full disclosure provisions and philosophy of the Securities Act, there are very serious distinctions between the sale of real estate and the sale of securities that weigh against applying the Securities Act cases in full force, particularly when considering that a unique and complex body of law surrounds the Securities Act and its progeny that does not appear to be readily applicable here.

15 U.S.C. § 1703(a)(2)(A) & (C), and that she need not allege the elements for fraud to state a claim.[2]

The Court disagrees with Plaintiff and concludes that amendment would be futile for the reasons stated below and, therefore, Plaintiff's Motion shall be denied as Plaintiff has not and cannot demonstrate that she is entitled to the extraordinary remedy of reconsideration. Plaintiff concedes that she only seeks leave to amend to add the Proposed Defendants to Count X. As such, since the Court concludes that Count X fails to meet the pleading requirements of Rule 8 and fails state a claim as a matter of law, leave to amend to add the Proposed Defendants would be futile. Further, since Count X fails to state a claim as a matter of law, reconsideration of the Court's prior ruling that Plaintiff's claims under 15 U.S.C. § 1703(a)(2)(A)-(C) are dismissed with prejudice is also not warranted.

While the Court is not inclined to declare the entire proposed Fourth Amended Complaint a shotgun pleading as requested by Defendants, the Court is persuaded that there are severe deficiencies in the Fourth Amended Complaint that make amendment futile. Unlike Plaintiff's Amended and Second Amended Complaint where each count contained factual allegations in addition to those set out in the first 232 paragraphs and where each count also adopted the allegations of all preced-ing counts by reference, Plaintiff's proposed Fourth Amended Complaint attempts to isolate those factual allegations that support each of Plaintiff's claims. For instance, while each Count does incorporate by reference the first 145 paragraphs, Plaintiff proceeds to set forth additional factual allegations in each Count and also points to specific paragraphs throughout the proposed Fourth Amended Complaint that support each claim. Thus, the Court concludes that Plaintiff has remedied some of the glaring pleading deficiencies of her earlier attempts in the proposed Fourth Amended Complaint.

 Nonetheless, the Court concludes that in regard to Count X of the proposed Fourth Amended Complaint, this Count amounts to a shotgun pleading. In Count X Plaintiff improperly lumps all the Defendants together such that Defendants do not have fair notice of the conduct at issue. In paragraph 217, Plaintiff makes the conclusory allegation that "[e]ach of these Altman Defendants played an important and substantial role in the wrongful acts described herein and their actions amount to a device, scheme, or artifice to defraud and/or their actions constituted a transaction, practice, or course of business which operates or would operate as a fraud or deceit upon Plaintiff in violation of 15 U.S.C. § § 1703(a)(2)(A) & (C)," yet there are no specific factual allegations as to how each individual Defendant was involved in the purported fraud or deceit. Other than

---

**2.** Plaintiff's argument here is not entirely clear. Based upon the arguments presented at the hearing before the undersigned, it appears that Plaintiff is arguing for a kind of strict liability under 15 U.S.C. § 1703(a)(2)(A) & (C) whereby Plaintiff can simply allege "deceptive" conduct without showing that the purported "deception" was made to Plaintiff or that Plaintiff was damaged such that the fraud elements do not apply to Count X. Yet, importantly, Plaintiff has cited to no cases where a court has held that the fraud elements do not apply to 15 U.S.C.

§ 1703(a)(2)(A) & (C) or that a plaintiff can support a claim under 1703(a)(2)(A) & (C) by simply showing any "deceptive" conduct, rather than a deceptive act directed towards the plaintiff that relates to the plaintiff's decision to purchase the subject property. On the contrary, this Court and others within this district have consistently held that the fraud elements apply to claims under the ILSDA that sound in fraud. *See Garcia,* 528 F.Supp.2d at 1295–96 (applying fraud elements to the plaintiff's claims under the ILSDA); *see also* DE–125, pg. 17.

alleging that each Defendant is either a Developer or Agent of Sapphire, Plaintiff repeatedly refers to Defendants in general without specific allegations to support a claim against each individual Defendant. In fact, the only Defendant identified by name as having any role whatsoever in connection with the purported fraud or deceit in Count X is Altman Development Corporation, yet there are no allegations somehow tying Altman Development Corporation's purported conduct to the other Defendants. As such, the Court concludes that Count X improperly lumps Defendants together thereby violating the pleading requirements of Rule 8 and, therefore, amendment would be futile and reconsideration is not warranted.[3]

▪ The Court also concludes that amendment is futile and reconsideration is not warranted on the ground that Plaintiff has failed to allege the essential elements for a claim sounding in fraud. As explained above, Plaintiff has cited to no cases indicating that the elements for fraud do not apply to her claim under 15 U.S.C. § 1703(a)(2)(A) & (C) in Count X. On the contrary, as this Court and others within this district have consistently held, alleged violations of 15 U.S.C. § 1703(a)(2)(A)-(C) are claims sounding in fraud [DE–125, pg. 17] and, thus, must be pled to meet the fraud requirements. *See Garcia,* 528 F.Supp.2d at 1295–96 (applying fraud elements to the plaintiff's claims under the ILSDA); *Weaver v. Opera Tower, LLC,* Case No. 07–23332–CIV, 2008 WL 4145520 at *4–5 (S.D.Fla. Aug.1, 2008) (dismissing the 15 U.S.C. § 1703 claim and holding that the plaintiffs must "demon-strate reasonable reliance on the alleged misrepresentation" to support a cause of action under the ILSDA).

Notably, Plaintiff does not address Defendants' arguments related to her failure to allege a misrepresentation to her or reliance on the purported misrepresentations and, therefore, Count X fails on this ground. Plaintiff simply argues without support that she does not need to allege these elements and that with the exception of Defendant Sapphire Fort Lauderdale, LLLP, none of the Defendants named in Count X are parties to the sales contract and, therefore, cannot invoke the provisions of the contract to bar this claim. Yet, the issue is not whether a party can invoke the terms of a contract, but rather if Plaintiff can allege she reasonably relied upon a purported inference that was contradicted by the terms of the sales contract.

▪ The Court concludes as a matter of law that Plaintiff cannot demonstrate she reasonably relied upon the purported inference that the project would receive FNMA approval in order to support Count X, when this inference is contradicted by the sales contract agreement. "Reliance on fraudulent representation is unreasonable as a matter of law where the alleged misrepresentations contradict the express terms of the ensuing written agreement." *Garcia,* 528 F.Supp.2d at 1295 (dismissing ILSDA claim where purported misrepresentations were contradicted by the purchase agreement and, therefore, the plaintiff could not have reasonably relied upon the representations); *see also Weaver,* 2008 WL 4145520 at *4–5

---

3. By improperly lumping and failing to allege the factual allegations supporting the claim as to each Defendant, Count X—as a claim sounding in fraud—would also fail under the requirements of Rule 9(b) of the Federal Rules of Civil Procedure which provides that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." *See also Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1381 (11th Cir.1997) ("fair notice is '[p]erhaps the most basic consideration' underlying Rule 9(b), the plaintiff who pleads fraud must 'reasonably notify the defendants of their purported role in the scheme.' ").

(dismissing ILSDA claim in a condominium deposit case because pre-agreement misrepresentation was contradicted by contract language). The sales contract expressly states that representations or understandings that are not contained in the sales contract are void and have no effect and Plaintiff agreed within the sales contract that she did not rely on any representations that were not contained within the sales contract. [DE–4–1]. Thus, Plaintiff appears to be asking the Court to read a purported inference into the sales contract that the parties did not negotiate and, in fact, would expressly contradict the terms of the parties' negotiated agreement. The Court declines to do so and instead holds that Plaintiff cannot establish reasonable reliance as a matter of law when any purported inference as to FNMA approval is contradicted by the sales contract. Thus, amendment is futile and reconsideration is not warranted on this additional ground.

██ Finally, Count X fails as a matter of law, as Plaintiff has not and cannot allege that she was damaged since Fannie Mae has not revoked FNMA approval and, thus, her damages at best are entirely theoretical. Plaintiff argues that she need not suffer, allege, or prove that she suffered damages to prevail under a section 1703(a)(2)(A) & (C) claim since the statute provides that a purchaser may bring an action in law or in equity and she is only seeking equitable relief. Yet, as explained above, Plaintiff has not demonstrated that the elements for fraud are inapplicable to her section 1703(a)(2)(A) & (C) claim and a required element for a fraud claim is that the plaintiff suffer damages.[4] As such, the Court concludes that Count X fails as a matter of law and, thus, amendment is futile and reconsideration is not warranted.

### III. CONCLUSION

Having concluded that Count X fails to meet the pleading requirements of Rule 8 and fails state a claim as a matter of law, leave to amend to add the Proposed Defendants would be futile. Further, since Count X fails to state a claim as a matter of law, the extraordinary remedy of reconsideration of the Court's prior ruling that Plaintiff's claims under 15 U.S.C. § 1703(a)(2)(A)-(C) are dismissed with prejudice is also not warranted. Accordingly, for the aforementioned reasons, it is **ORDERED AND ADJUDGED** that Plaintiff's (i) Renewed Motion Based on New Evidence for Reconsideration of the Court's February 1, 2010 Order Partially Granting Defendants' Motions to Dismiss; (ii) Motion Based on Good Cause to Add Parties with (iii) Incorporated Memorandum of Law [DE–159] is hereby **DENIED.**

**DONE AND ORDERED.**

---

4. Moreover, although not raised by Defendants, the Court notes that if Plaintiff concedes that she has suffered no injury or damages as a result of Defendants' purported conduct in Count X, it is questionable whether Plaintiff would even have standing to assert such a claim as there is no purported injury for the Court to redress.